BARRINGTON COMMUNITY UNIT SCHOOL DISTRICT No. 220, Plaintiff-Appellant, v. SPECIAL EDUCATION DISTRICT OF LAKE COUNTY *et al.*, Defendants-Appellees.

Second District   No. 2—92—0716

Opinion filed May 6, 1993.

James C. Bakk, of Law Offices of James C. Bakk, of Waukegan, for appellant.

Anthony G. Scariano, Anthony Ficarelli, and Sarah R. Carlin, all of Scariano, Kula, Ellch & Himes, Chartered, of Chicago, for appellee Special Education District of Lake County.

Mildred F. Haggerty, of Haggerty, Koenig & Hill, Chartered, of Chicago, for appellee SEDOL Teachers Union.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Barrington Community Unit School District No. 220, appeals the dismissal of count II of its complaint. That count sought declaratory relief in a contractual dispute between itself and defendant Special Education District of Lake County (SEDOL). Defendant SEDOL Teachers Union (Union) moved to dismiss the complaint for lack of subject-matter jurisdiction, and the court granted the motion. The sole issue for review is whether the trial court erred in finding that it lacked subject-matter jurisdiction to consider a declaratory judgment action involving the rights of two school districts under an existing contract.

On May 1, 1992, plaintiff filed a two-count complaint. Count I sought an injunction to stay arbitration proceedings. Plaintiff alleged that it was a member of SEDOL, a cooperative school district which provided special education services. The member district relationship was governed by an article of joint agreement of SEDOL and by certain provisions in a supplement to an agreement between SEDOL and the Union (Supplement). Plaintiff further alleged that it had been notified that certain of its acts in the "take back" of programs were the subject of a grievance filed by the Union. Plaintiff did not have a collective bargaining agreement with SEDOL. SEDOL's attorney advised plaintiff that if it failed to participate in the arbitration, plaintiff

may be collaterally estopped from asserting its position, and any rights it possessed to "take back" programs may be forfeited, if the arbitration result is favorable to the Union. Plaintiff believed that the arbitration related to the contractual relationship between itself and SEDOL, specifically, the program "take backs." Plaintiff alleged that its contractual relationship with SEDOL was a nondelegable, nonarbitrable discretionary responsibility of plaintiff. It reasoned that since it is not a party to an arbitration agreement, and the subject-matter of the arbitration was the intergovernmental contractual relationship between plaintiff and SEDOL, the arbitration should be enjoined or stayed.

In count II, directed solely against SEDOL, plaintiff alleged that on January 13, 1992, it advised SEDOL that it was taking back certain programs. As part of the "take back," plaintiff determined that there would be no employment vacancies. Plaintiff alleged that its acts of notifying SEDOL of the "take backs" were in compliance with the Supplement. Plaintiff requested a declaration of its rights and SEDOL's rights under the Supplement relating to program "take backs," and a declaration that plaintiff properly exercised its rights and discharged its responsibilities.

Plaintiff attached to its complaint the articles of joint agreement of SEDOL. This document set forth the provisions for a governing board for SEDOL, an executive board and its duties, and the obligations of the member districts. Those obligations were limited to providing classrooms, sharing in administrative costs, sending representatives to meetings, and paying a tax for SEDOL. The joint agreement further delineated terms regarding SEDOL operating as a district. The SEDOL teachers were to be considered faculty members of the member district to which they were assigned, with the member district and SEDOL sharing supervisory responsibilities. The SEDOL teachers had their own salary schedule determined by the executive board of SEDOL. The chief administrator of SEDOL had the responsibility for the certification and special education approval of the SEDOL teachers assigned to the member districts. Member districts could charge SEDOL a room rental. The agreement further provided for the involuntary removal of a member district and for withdrawal from SEDOL. Finally, SEDOL was authorized to employ teaching staff and to discipline and discharge employees.

Plaintiff also appended a copy of the Supplement to the Agreement between SEDOL and the Union. By its own terms, the Supplement was made part of the collective bargaining agreement. SEDOL entered into the Supplement "on behalf of itself and its member

boards." The Supplement set forth conditions for the return of special education programs to the local level and the filling of vacancies in the member districts for special education teachers. The Supplement assumed the return of programs would result in vacancies. The Supplement provided that when a member board chooses to take back a program, it must first notify SEDOL, and that "action constitutes acknowledgment of the member board's duty to abide by the terms and conditions of this Supplement to the Agreement." The Supplement set forth SEDOL employees' rights when programs are returned and the procedures for filling vacancies created in the member districts. A member board is required to notify SEDOL of its intent to take back programs and to specify the employment positions involved. SEDOL is required to advertise such vacancies to SEDOL tenured teachers. If no SEDOL teacher is placed in the vacant position, the member board "shall hold the position vacant until such time as the SEDOL layoff procedure is complete." SEDOL had the duty to notify affected SEDOL teachers of SEDOL's intent to lay them off. Only after tenured SEDOL teachers subject to layoff have been offered the vacant position in the member district can the member district fill the remaining vacancies with other SEDOL teachers or advertise and fill the vacancies with other teachers.

Plaintiff also attached a copy of correspondence concerning the taking back of programs. One is a letter from SEDOL's attorney, dated September 29, 1989, which interpreted the Supplement as allowing the member districts to determine whether any vacancies result from the return of special education programs to the member district. In a letter dated January 13, 1992, plaintiff's director of special services notified SEDOL of plaintiff's intent to take back three classrooms. The letter dated February 27, 1992, is SEDOL's response to the grievance filed by the Union concerning plaintiff's and another district's failure to notify SEDOL of vacancies, which the Union believed was a violation of the Supplement. SEDOL's superintendent stated that because it posted vacancies reported in the member districts, it complied with its contractual obligation. The last letter, dated April 16, 1992, was from SEDOL to plaintiff, stating SEDOL's strategy in the arbitration and encouraging plaintiff to participate. SEDOL warned that if plaintiff failed to participate in the arbitration, plaintiff would waive any defenses and would be estopped from asserting any defenses in subsequent proceedings. In addition, SEDOL stated its intent "to assert that if the arbitrator finds a violation of the Agreement, a remedy may be had only as against Barrington School District 220, and not against SEDOL."

Plaintiff filed a motion seeking a stay of the arbitration between SEDOL and the Union to preserve the status quo or, in the alternative, an entry of an order providing that no relief from the arbitration may be had against plaintiff. SEDOL filed a response to the motion, which denied that plaintiff did not have an arbitration agreement with the Union and denied the allegation that plaintiff's relationship with SEDOL was nondelegable and nonarbitrable. Plaintiff then filed an amended motion to stay arbitration between itself and SEDOL, but it agreed that the arbitration between SEDOL and the Union should proceed. SEDOL filed an answer to the complaint, denying that plaintiff complied with the terms of the contracts.

SEDOL also filed a response to the amended motion for the stay of arbitration. SEDOL asserted that plaintiff and SEDOL were educational employers and the Union was the exclusive representative of the teachers employed by SEDOL, within the meaning of the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/1 et seq. (West 1992)). SEDOL reasoned that the arbitration was therefore solely a dispute between an educational employer (SEDOL) and the Union over whether the employer violated a provision of the collective bargaining agreement between those two parties. Under Board of Education of Warren Township High School District 121 v. Warren Federation of Teachers, Local 504 (1989), 128 Ill. 2d 155, the circuit court does not have the power to enjoin the arbitration of public educational labor relations disputes; the exclusive jurisdiction is vested with the Illinois Educational Labor Relations Board (IELRB). SEDOL further argued that the arbitration dispute at issue was governed by the Act. In addition, SEDOL maintained that the arbitration involved an interpretation of a provision of the collective bargaining agreement, which provided that the Supplement was made by SEDOL " 'on behalf of itself and its member boards' " and provided for procedures for the employment of teachers in the event SEDOL programs are returned to the member districts. SEDOL concluded that plaintiff's rights and obligations under the agreement were covered by the collective bargaining agreement and were therefore subject to review by the IELRB. Finally, SEDOL argued that whether there was an agreement by plaintiff to arbitrate and the question of delegability are issues of substantive arbitrability reserved to the IELRB. SEDOL requested the court to deny the motion to stay and to dismiss the complaint for lack of subject-matter jurisdiction.

The Union filed a motion to dismiss the entire complaint for lack of subject-matter jurisdiction. The Union adopted the arguments presented in SEDOL's motion. The Union further alleged that the issues

raised by plaintiff in the complaint for declaratory judgment present questions of contract interpretation or arbitrability which are not within the jurisdiction of the circuit court and that no actual controversy existed between plaintiff and either defendant. The court dismissed both counts of the complaint pursuant to section 2—619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(1) (West 1992)).

Plaintiff filed a motion to reconsider the dismissal as to count II of the complaint. Plaintiff argued that the court should reinstate count II because the Union was not a party to that count. Plaintiff further argued that there was a justiciable controversy because the contract at issue was between two school districts and was not subject to the terms of the Act. The court denied the motion to reconsider, and plaintiff timely appealed the dismissal of count II of the complaint.

■■ Plaintiff contends that the court erred in dismissing count II for lack of subject-matter jurisdiction.

"Subject matter jurisdiction, which is conferred on courts by the constitution or by statute [citation], refers to the power of courts to hear and decide the type of case presented [citation]. When a statute confers on a court special jurisdiction not arising out of the common law, that jurisdiction is limited to the language of the act conferring it. [Citation.] The court has no powers from any other source to hear the case, and if the mode of procedure prescribed by statute is not followed, no jurisdiction is conferred on the circuit court." (*Ardt v. Illinois Department of Professional Regulation* (1992), 154 Ill. 2d 138, 145-46.)

We reject plaintiff's argument that the dismissal of the count was improper because the Union was not a party to that count. Subject-matter jurisdiction can be raised *sua sponte* by the trial court, since the lack of subject-matter jurisdiction deprives the trial court of all power except to dismiss the action. (*Swope v. Northern Illinois Gas Co.* (1991), 221 Ill. App. 3d 241, 243.) There is no dispute that the Union could have attacked count I on the basis of subject-matter jurisdiction, and, since the same infirmity was alleged as to both counts and the trial court could have dismissed count II *sua sponte*, we conclude that it was immaterial that the Union was not a party to count II.

The trial court dismissed the complaint pursuant to the supreme court's opinions in *Board of Education of Community School District No. 1 v. Compton* (1988), 123 Ill. 2d 216, and *Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504* (128 Ill. 2d 155). In *Compton*, the court held that the Act divests the circuit court of jurisdiction

to vacate or enforce arbitration awards in educational labor disputes, and *Warren Township* held that the Act divests the circuit court of power to enjoin such arbitration.

Plaintiff first argues that the subject of count II is a joint agreement for special education and, therefore, the School Code (105 ILCS 5/1—1 *et seq.* (West 1992)), rather than the Act, applies to its cause of action. The School Code provides that a school board has the power to enter into joint agreements with other school boards to provide special education services. (105 ILCS 5/10—22.31(a) (West 1992).) The purpose of the Act is "to regulate labor relations between educational employers and educational employees, including the designation of educational employee representatives, negotiation of wages, hours and other conditions of employment and resolution of disputes arising under collective bargaining agreements." (115 ILCS 5/1 (West 1992).) According to plaintiff, count II sought a declaration of rights under the joint agreement and was not addressed to any collective bargaining agreement.

■ SEDOL and the Union respond that the circuit court does not have subject-matter jurisdiction because the rights at issue are those of plaintiff and SEDOL *vis-a-vis* the Union. However, when reviewing the dismissal of a complaint pursuant to section 2—619, we must consider whether there is a defect in the pleading, and we must take as true all well-pleaded facts. (See *Michel v. Gard* (1989), 181 Ill. App. 3d 630, 635.) Count II seeks a declaration of rights between plaintiff and SEDOL, not between plaintiff and the Union. We decline the request of SEDOL and the Union to redraft the pleading.

■ SEDOL asserts that it was plaintiff's agent and SEDOL bound plaintiff to the collective bargaining agreement. However, SEDOL's argument supports plaintiff's position: the issue before the court was the relationship between SEDOL and plaintiff, which could include the question whether SEDOL is plaintiff's agent. That determination depends on an interpretation of the joint agreement and the Supplement.

The Union argues that plaintiff is an "Educational employer" under the Act. The Act defines an "Educational employer" as "the governing body of a public school district, [or] combination of public school districts, *including the governing body of joint agreements of any type formed by 2 or more school districts.*" (Emphasis added.) (115 ILCS 5/2(a) (West 1992).) According to the statute, the educational employer in this situation is the governing body of the joint agreement, but it is not clear whether the individual member boards would be considered joint employers. Thus, whether plaintiff is to be

considered an educational employer depends on the interpretation of the statute. This could constitute an attack on the jurisdiction of the IELRB which is an exception to the exhaustion of remedies doctrine. (*Office of the Lake County State's Attorney v. Illinois Human Rights Comm'n* (1990), 200 Ill. App. 3d 151, 156-57.) However, plaintiff did not make this argument in the trial court or on appeal, and, therefore, we cannot consider it as a basis to reverse the judgment. See 134 Ill. 2d R. 341(e)(7).

Plaintiff's contention is similar to the situation in *County of Kane v. Randall* (1990), 194 Ill. App. 3d 1029, an appeal of the dismissal for lack of subject-matter jurisdiction of two declaratory judgment claims. The appellate court considered whether the trial court had jurisdiction to declare the respective bargaining rights and responsibilities of Kane County and the Kane County sheriff, the joint employers of personnel represented by a union. The trial court had dismissed the county's claim and the sheriff's counterclaim because it believed the dispute involved labor negotiations governed by the Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 1992)). The appellate court concluded that the dispute between the two employers did not fall within the scope of the Illinois Public Labor Relations Act because that act did not address disputes between co-employers. (*County of Kane*, 194 Ill. App. 3d at 1034.) The labor board and the union argued that the trial court did not have jurisdiction "because the dispute 'involves the collective bargaining process.' " (*County of Kane*, 194 Ill. App. 3d at 1034.) The court rejected this argument because "[a]n adequate avenue of resolution must exist for a dispute between governmental bodies and officials," although recognizing that the suit would "in all probability affect the bargaining process." 194 Ill. App. 3d at 1034.

Like the Union here, the union in *County of Kane* relied on *Board of Education v. Compton.* The court, however, distinguished *Compton:*

> "*Compton* involved a dispute between an employee and an employer, a dispute clearly covered by the act there involved. Again, the case before us involves a dispute between joint employers. This dispute is not subject to the strictures of the Act. While the legislature may find it necessary and salutary to limit the review of decisions arising under the labor relations acts, it has not so limited the parties' actions in this case. We find no intention on the part of the legislature to tie the hands of disputatious governmental bodies or officials and require them to violate the law in order to have their legitimate dispute re-

solved." (Emphasis in original.) *County of Kane*, 194 Ill. App. 3d at 1035.

▇ Just as in *County of Kane*, the declaratory judgment claim here seeks a determination of the rights of two governmental entities and does not seek a determination of the rights as between an employer and an employee.

Moreover, the Union filed its grievance against SEDOL, and, according to the letter from SEDOL's attorney, the Union alleged violations of the Supplement regarding a reduction in force and failure to post vacancies. From the pleadings and attachments, it appears that the reduction in force was a reduction of the SEDOL force, not of plaintiff's regular teaching force. Under the Supplement, only SEDOL had the obligation to post vacancies. Plaintiff alleged that it is not involved in the labor dispute, but that it had a dispute with SEDOL.

We note, parenthetically, that section 24—11 of the School Code provides for the tenure rights of special education teachers in special education joint agreements. (105 ILCS 5/24—11 (West 1992).) Under section 24—11, in the event of a reduction in the number of programs in a joint agreement, a special education teacher "on contractual continued service shall be eligible for employment in the joint agreement programs" based on seniority, "unless an alternative method of determining the sequence of dismissal is established in a collective bargaining agreement." (105 ILCS 5/24—11 (West 1992).) The governing board of the joint agreement may assume the responsibility for employment and termination actions. Finally, section 24—11 provides that "in the event of the termination of the program[, a tenured contract special education teacher] shall be eligible for any vacant position in any of such districts for which such teacher is qualified." (105 ILCS 5/24—11 (West 1992).) It appears that the Supplement was designed to provide an alternate method for determining seniority and did not impose any duties on plaintiff regarding vacancies beyond those imposed by the statute. Without knowing what were the terms of the collective bargaining agreement, we cannot determine whether, under that contract, the Union would have any grievance against plaintiff.

We conclude that count II did not seek a determination of arbitrability of labor issues so as to implicate the Act as it did not ask the court to rule on a labor dispute between an employer and an employee.

Plaintiff asserts that the court had jurisdiction over the declaratory judgment claim because count II alleged an actual controversy regarding plaintiff's and SEDOL's rights under a contract. In gen-

eral, the circuit court has original jurisdiction over declaratory judgment proceedings. *Lake County State's Attorney v. Illinois Human Rights Comm'n*, 200 Ill. App. 3d at 155.

According to plaintiff, count II alleged a justiciable issue. As plaintiff properly notes, the construction of a contract and the declaration of rights are proper subjects for a declaratory judgment action. (See 735 ILCS 5/2—701(a) (West 1992).) Plaintiff asserts that an actual controversy exists because SEDOL denied the allegation that plaintiff fully complied "with its rights and responsibilities under the Supplement to the Agreement \*\*\* and explicitly followed the intention of the parties."

The Union responds that count II failed to allege a justiciable controversy because the only controversy pending was the arbitration dispute between SEDOL and plaintiff against the Union. The Union argues that the letter from SEDOL's attorney to plaintiff notifying plaintiff of the arbitration did not constitute a justiciable controversy between the two districts.

The declaratory judgment procedure permits a court to address a controversy after a dispute has arisen but before either party has taken any action which could give rise to a claim for damages or other relief. (*Bank of Chicago-Garfield Ridge v. Park National Bank* (1992), 237 Ill. App. 3d 1085, 1096.) A declaratory judgment action must be based on an "actual controversy." (735 ILCS 5/2—701(a) (West 1992).) An actual controversy is a dispute capable of a definite and immediate determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof. (*Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 306.) This requirement is designed to prevent the court from passing on hypothetical questions of law or rendering advisory opinions, such as when the case is moot or premature. (*Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 450-51.) A claim is justiciable where the challenge to the plaintiff's legal interests casts doubt, insecurity, or uncertainty on the plaintiff's rights or interests. (*Stone v. Omnicom Cable Television of Illinois, Inc.* (1985), 131 Ill. App. 3d 210, 214.) The court should construe the declaratory judgment statute broadly so as not to restrict the remedy by unduly technical interpretations. *Illinois Gamefowl Breeders Association*, 75 Ill. 2d at 452.

According to the letter attached to the complaint, if the result of the arbitration is unfavorable to SEDOL, it intends to have the Union seek a remedy from plaintiff instead of SEDOL and that if plaintiff failed to participate in the arbitration, it would be estopped to present any defenses. Plaintiff's complaint sought a declaration that it com-

plied with its obligations under the supplemental agreement and did not breach any duties *vis-a-vis* SEDOL. Plaintiff fails to argue how the declaratory relief will have any effect on its rights or interests as against SEDOL. In addition, plaintiff's interests will be affected only if the arbitration result is unfavorable to SEDOL. "[I]f the plaintiff's interests would be adversely affected only in the event some future possibility occurs or does not occur[,] the action for a declaratory judgment should be dismissed." (*Township High School District 203 v. Village of Northfield* (1989), 184 Ill. App. 3d 367, 373.) We conclude that count II fails to allege a justiciable issue for declaratory relief. Thus, the trial court properly dismissed count II of the complaint.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

WOODWARD and COLWELL, JJ., concur.