BRADLEY BAKER, Petitioner-Appellee, v. DANIEL S. BERGER, LTD., Respondent-Appellant (Health Professionals, Inc., Respondent).

First District (2nd Division)   No. 1—00—2312

Opinion filed June 29, 2001.

Richard W. Hillsberg and Diane J. Silverberg, both of Kovitz, Shiffrin & Waitzman, of Buffalo Grove, and Loren J. Mallon, of Loren J. Mallon & Associates, P.C., of Northbrook, for appellant.

Sabrina Haake and Holiday Tarr, both of Haake & Tarr, of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

This is an appeal from the denial of a motion for Supreme Court Rule 137 (155 Ill. 2d R. 137) sanctions against petitioner-appellee Bradley Baker, M.D., and his counsel. Underlying this appeal are two lawsuits brought by Baker. The first is a federal action filed on September 7, 1999, against Daniel Berger, M.D. (Berger), respondent-appellant Daniel S. Berger, M.D., Ltd. (the Berger Corporation), and

an entity bearing the name of North Star Medical Center (North Star). In the federal complaint, Baker sought damages for sexual harassment, discrimination, and breach of a purported partnership agreement, presumably generated by the conduct of Berger with respect to Baker. The second suit, a state court action for declaratory judgment, was filed on November 16, 1999, while the federal suit was still pending.[1] In the declaratory judgment action, which named the Berger Corporation and Health Professionals, Inc. (HPI), as respondents,[2] Baker sought a declaration as to the unenforceability of certain noncompetition clauses contained in three contracts, one of which purported to be an employment agreement between Baker and the Berger Corporation.

In April 2000 the trial court dismissed the Berger Corporation from the declaratory judgment suit, on the ground that none of the contracts had been signed by the Berger Corporation. Following its dismissal, the Berger Corporation moved for sanctions against Baker and his counsel, which motion, as noted, was denied by the trial court.

The three entities involved in this case are the Berger Corporation; Health Professionals, Inc. (HPI); and the Center for Special Immunology (CSI), which was a subsidiary of HPI. CSI operated a medical facility at 2835 North Sheffield in Chicago, where it employed Baker as a treating physician. Baker's immediate supervisor was Berger, who was the medical director for the CSI facility. Berger also is the president, sole shareholder and director of the Berger Corporation, a medical practice with offices at the same 2835 North Sheffield address as the CSI facility.

Baker worked for CSI from July 27, 1997, until April 7, 1998. According to Baker's federal complaint, it was in July 1997 (while Baker was employed by CSI) that he and Berger first discussed forming an independent partnership. Baker alleges that in April 1998 he, Berger and the Berger Corporation verbally formalized the terms of an agreement under which Baker was to be a full and equal partner with Berger by the fourth year of the partnership. For the time being, the partnership was to operate under the name "Daniel S. Berger, M.D.,

---

[1]According to the Berger Corporation's appellate brief, judgment was entered in the federal suit in favor of the Berger Corporation and the other defendants on August 15, 2000, after the dismissal of Baker's declaratory judgment action in state court. Baker's motion for reconsideration of the federal court judgment apparently is pending in the United States District Court for the Northern District of Illinois.

[2]Baker apparently never served HPI, which was subsequently dismissed from the case for want of prosecution.

Ltd." and/or "Berger-Baker, Ltd.," but eventually it was to operate under the name "North Star Medical Center."[3]

Baker further alleges in his federal complaint that in July 1998 he and Berger attended a conference on acquired immunodeficiency syndrome (AIDS) in Geneva, Switzerland. According to Baker, during this two-week conference trip, "defendant [Berger] repeatedly pressured [Baker] to have sex with him," but Baker refused. In September 1998, after they had returned to Chicago, Berger allegedly "advised [Baker] that [Baker] was no longer going to be a partner, and instead offered [Baker] an employment agreement." On March 5, 1999, Baker tendered his resignation, effective April 9, 1999.

Baker filed his single-count complaint for declaratory judgment against the Berger Corporation and HPI on November 16, 1999. As noted, the complaint sought a judgment declaring unenforceable certain noncompete provisions contained in three contracts. Baker's alleged reason for seeking declaratory relief was that he "wishe[d] to practice medicine within the City of Chicago and would be prevented from doing so if any of the contracts is found to be enforceable."

Copies of the contracts were attached to the complaint. Two of them, both dated July 1, 1997, purported to be employment agreements, one between Baker and the Berger Corporation (the Berger Corporation Agreement), and the other between Baker and CSI. The copy of the CSI contract was signed by Baker and by Berger as CSI medical director, but the Berger Corporation Agreement was unsigned. The third contract, which was dated July 28, 1997, was a "Confidentiality and Non-Competition Agreement" between Baker and HPI, through HPI's subsidiary, CSI. This agreement (hereinafter the HPI agreement) was signed only by Baker.

Under the noncompete provisions in the Berger and CSI agreements, which are nearly identical, Baker was prohibited from competing as a practicing physician within five miles of the CSI Chicago facility "for eighteen months following the date of termination." The restrictive covenant in the HPI agreement restricts Baker from competing within 50 miles of the CSI clinic "for one (1) year immediately following the termination" of his employment.

Baker dealt with the Berger Corporation Agreement in a separate section of his single-count declaratory judgment complaint, alleging that the contract "was presented to him by [the Berger Corporation]" and that "[t]he parties to the contract *were to be* [the Berger Corporation] and [Baker]." (Emphasis added.) Also in this section, Baker explicitly alleged that his employer was CSI, not the Berger Corporation. The complaint stated:

---

[3]It is unclear from the record if North Star ever materialized as an entity.

"[The Berger Corporation] did not employ [Baker] upon his relocation to Chicago from Washington[, D.C., where Baker had completed his residency]. [The Berger Corporation] did not pay [Baker's] salary or provide [Baker] with any benefits. From the time of [Baker's] hire on July 27, 1997[,] until the time all relations with CSI were severed on April 7, 1998[,] it was CSI who employed [Baker], paid his salary and provided his benefits. *** It was the CSI facility in Chicago that was [Baker's] place of employment for nearly a year after he was retained by CSI."

Attached to Baker's declaratory judgment complaint was his 1997 W-2 form showing CSI as his employer.

On January 7, 2000, the Berger Corporation moved to dismiss Baker's declaratory judgment complaint pursuant to sections 2—615 and 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619(a)(9) (West 1998)). According to the Berger Corporation, the only one of the three contracts which related to the Berger Corporation was the unsigned Berger Corporation Agreement. The Berger Corporation argued that the "Berger [Corporation] Agreement attached to the Complaint [was] not executed by either party" and thus was not operative. Hence, there was no actual controversy to be adjudicated, as required by section 2—701 of the Code of Civil Procedure (735 ILCS 5/2—701 (West 1998)), and Baker's complaint therefore should be dismissed.

In support of its motion, the Berger Corporation attached an affidavit of Berger stating that "[t]o the best of [his] knowledge and recollection[,] neither [he] nor anyone else ever signed the purported [Berger Corporation Agreement]." Berger further stated that he had "never seen an original or even a copy" of this agreement, adding that he was the only person who would have been authorized to sign it on behalf of the Berger Corporation. The affidavit also stated that Berger never told Baker or his attorneys that he would enforce the Berger Corporation Agreement against Baker.

The Berger Corporation also alleged in its motion that Baker "manufactured" the alleged controversy as to the enforceability of the Berger Corporation Agreement and the other contracts in a "belated attempt" to justify his failure to seek employment following termination, with respect to his action for damages in his federal lawsuit. According to the Berger Corporation, Baker was attempting to establish (through his declaratory judgment complaint) that he was prevented from seeking employment, and thus from mitigating damages, by the noncompete provisions in the Berger Corporation Agreement and the other contracts.

The Berger Corporation further alleged in its motion that a second

motive for Baker's declaratory judgment complaint was to harass Berger and the Berger Corporation by increasing their costs of defense.

On April 4, 2000, after hearing argument, the trial court granted the Berger Corporation's motion to dismiss Baker's declaratory judgment complaint. The court found that none of the contracts attached to the complaint was executed by the Berger Corporation and that Baker and the Berger Corporation "never entered into any kind of agreement that is enforceable in this court." Since neither Berger nor the Berger Corporation "were signatories," the court concluded that there was "no recourse other than to dismiss [the Berger Corporation] as a defendant."

Shortly thereafter the Berger Corporation moved for sanctions against Baker and his attorneys, pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137). According to the Berger Corporation, the Berger Corporation Agreement was unsigned and unenforceable, and thus it did not present the trial court with a ripe controversy. In support of this contention, the Berger Corporation attached a copy of a letter from its counsel to Baker's counsel dated December 24, 1999 (after the complaint was filed). In this letter, the Berger Corporation's counsel stated that "no fully executed written employment agreement of any type exists between your client[,] Dr. Bradley Baker[,] and Daniel S. Berger, M.D., Ltd." Accordingly, the Berger Corporation argued that Baker's declaratory judgment complaint was not warranted by existing law, in contravention of Rule 137. Baker also ran afoul of this rule, the Berger Corporation maintained, in that he filed his complaint "for the improper purpose of trying to manufacture an excuse for plaintiff's failure to have attempted to mitigate his damages" in the separate, federal suit.

On June 13, 2000, the trial court heard argument and denied the Berger Corporation's motion for Rule 137 sanctions. The court found that even though the Berger Corporation Agreement was unsigned, there was a reference in the Berger Corporation Agreement to "Daniel S. Berger[,] Limited, a corporation[,] as being the entity within which the contract is entered." According to the court, "[b]ecause there was one contract [the CSI contract] that had appended the signature of both [parties], there was some basis for concern that the prior contract of the same date [the unsigned Berger Corporation Agreement] entered into between Daniel S. Berger[,] Limited[,] and Bradley Baker might constitute a basis for the undertaking between the parties." The court also determined that Berger's signature on the CSI agreement, "without identifying his corporate status as being inclusive, could give rise to the colorable belief that he entered into [it in] his own capacity as medical director of [the] Center for Special Immunol-

ogy." The court concluded that Baker had "a prima facie colorable basis for determining that there could be liability on [his] behalf *** with regard to these undertakings," and Rule 137 sanctions therefore were inappropriate.

In response to the Berger Corporation's emergency motion, the court subsequently found, pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), that there was no just reason for delaying enforcement or appeal of its June 13, 2000, order denying the motion for sanctions. The court also ordered HPI, the only other respondent in Baker's declaratory judgment action, "dismissed with prejudice for want of prosecution."

The instant appeal followed.

## DISCUSSION

The Berger Corporation's central argument on appeal is that the Berger Corporation Agreement was unsigned and unenforceable, and that Baker was fully aware that there was no basis for the lawsuit when he filed it, since the agreement was never signed. Baker does not allege that there was any oral agreement nor any other basis pursuant to which Baker would have been bound to the Berger Corporation by any noncompete agreement which would have required a declaratory judgment to resolve it. Accordingly, the Berger Corporation urges that Baker's complaint was not warranted by existing law, in violation of Rule 137, and that the trial court therefore abused its discretion in denying the motion for sanctions. We agree.

●1 A complaint for declaratory judgment must present an actual controversy, and it must demonstrate that the plaintiff is interested in the controversy. *First of America Bank v. Netsch*, 166 Ill. 2d 165, 173, 651 N.E.2d 1105, 1109 (1995), citing *Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 375-76, 362 N.E.2d 298, 300-01 (1977). An "actual controversy" exists if there is a legitimate, concrete dispute "admitting of an immediate and definite determination of the parties' rights, the resolution of which would help terminate all or part of the dispute." *Netsch*, 166 Ill. 2d at 173, 651 N.E.2d at 1109; see also *Kerr Steamship Co. v. Chicago Title & Trust Co.*, 120 Ill. App. 3d 998, 1003, 458 N.E.2d 1009, 1013 (1983). A plaintiff is interested in the controversy if he has a personal claim or right which is capable of being affected. *Kerr*, 120 Ill. App. 3d at 1003, 458 N.E.2d at 1013, citing *Underground Contractors*, 66 Ill. 2d at 376, 362 N.E.2d at 301.

●2 Supreme Court Rule 137 "authorizes the imposition of sanctions against a party or his attorney for filing a pleading, motion, or other paper that is not well grounded in fact and warranted by existing law or which has been interposed for any improper purpose." *In re*

*Marriage of Adler*, 271 Ill. App. 3d 469, 476, 648 N.E.2d 953, 957 (1995). The policy underlying the rule is to penalize a litigant "who pleads frivolous or false matters, or who brings a suit without any basis in the law." *In re Estate of Wernick*, 127 Ill. 2d 61, 77, 535 N.E.2d 876, 883 (1989); see also *In re Marriage of Pitulla*, 256 Ill. App. 3d 84, 90, 628 N.E.2d 563, 567 (1993) (purpose of Rule 137 is to penalize "the party who initiates a vexatious or harassing action without a sufficient legal or factual underpinning").

●3 In evaluating the conduct of an attorney, the court must determine what was reasonable at the time of filing. Thus the standard to be used in applying the rule is an objective one. "It is not sufficient that an attorney 'honestly believed' his or her case was well grounded in fact or law." *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1074-75, 651 N.E.2d 601, 607 (1995); *Edwards v. Estate of Harrison*, 235 Ill. App. 3d 213, 220-21, 601 N.E.2d 862, 867 (1992).

The appropriate standard of review for the granting or denying of sanctions is abuse of discretion. *Peterson v. Randhava*, 313 Ill. App. 3d 1, 9, 729 N.E.2d 75, 82 (2000). "A trial court abuses its discretion when its finding is against the manifest weight of the evidence [citation] or if no reasonable person would take the view adopted by it [citation]." *Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 244, 732 N.E.2d 1129, 1134 (2000) (hereinafter *TIC*). While the trial court's determination is given considerable deference, a reviewing court is not precluded "from independently reviewing the record and finding an abuse of discretion if the facts warrant." *TIC*, 315 Ill. App. 3d at 244, 732 N.E.2d at 1134.

●4 In the instant case, it is undisputed that the Berger Corporation Agreement, the only one of the three contracts which relates specifically to the Berger Corporation, is unsigned. This point is overwhelmingly supported by the evidence in the record. For example, the copy of the Berger Corporation Agreement which is attached to Baker's complaint is not signed. "When facts alleged in a complaint differ from those shown by an exhibit attached to the complaint, the exhibit controls." *Henderson v. Miller*, 228 Ill. App. 3d 260, 264, 592 N.E.2d 570, 573 (1992); see also *Johnson v. Johnson*, 244 Ill. App. 3d 518, 523, 614 N.E.2d 348, 352 (1993) (exhibit controls over complaint).

In addition, Baker's allegations in his complaint effectively concede that the Berger Corporation Agreement was not signed and that it was inoperative. See *Calloway v. Allstate Insurance Co.*, 138 Ill. App. 3d 545, 549, 485 N.E.2d 1242, 1245 (1985) ("Allegations contained in a complaint are judicial admissions and are conclusive against the pleader"). As noted, in the section of the complaint devoted to the

Berger Corporation Agreement, Baker alleges that "[t]he parties to the contract *were to be* [the Berger Corporation] and [Baker]." (Emphasis added.) Since this allegation states who the parties "were to be" rather than who they "were," the clear meaning is that the contract had not been executed. This is underscored later in the same section where Baker expressly alleges that his employer was CSI, not the Berger Corporation. As noted, the complaint states:

> "[The Berger Corporation] did not employ [Baker] upon his relocation to Chicago from Washington[, D.C., where Baker had completed his residency]. [The Berger Corporation] did not pay [Baker's] salary or provide [Baker] with any benefits. From the time of [Baker's] hire on July 27, 1997[,] until the time all relations with CSI were severed on April 7, 1998[,] it was CSI who employed [Baker], paid his salary and provided his benefits. *** It was the CSI facility in Chicago that was [Baker's] place of employment for nearly a year after he was retained by CSI."

Baker's concessions in his complaint fully bear out Berger's assertions about the Berger Corporation Agreement in his affidavit. As noted, in this affidavit Berger states that to the best of his knowledge and recollection "neither [he] nor anyone else ever signed" the Berger Corporation Agreement, nor had he ever seen an original or even a copy of it. Berger adds that he is the only person who would have been authorized to sign the agreement on behalf of the Berger Corporation. This assertion that the contract was not signed is made even more forcefully in a letter dated December 24, 1999, from the Berger Corporation's counsel to Baker's counsel. In this letter, as noted, the Berger Corporation's counsel states that "no fully executed written employment contract of any type exists between your client[,] Dr. Bradley Baker[,] and Daniel S. Berger, M.D., Ltd."

While the affidavit (dated January 5, 2000) and the December 24, 1999, letter both came after the declaratory judgment complaint was filed, they came well before the April 4, 2000, hearing on the Berger Corporation's motion to dismiss the complaint. "[A]n attorney has an obligation to promptly dismiss a lawsuit once it becomes evident that it is baseless." *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.*, 250 Ill. App. 3d 149, 153, 621 N.E.2d 77, 80 (1993) (hereinafter *Shea, Rogal*); *In re Custody of Caruso*, 185 Ill. App. 3d 739, 744, 542 N.E.2d 375, 378-79 (1989).

Thus it is beyond question that there was no executed contract between Baker and the Berger Corporation. Without such a contract, Baker's complaint presented no actual controversy (between Baker and the Berger Corporation) in which Baker had an interest, as required by section 2—701 of the Code of Civil Procedure (735 ILCS

5/2—701 (West 1998)). See *First of America Bank v. Netsch*, 166 Ill. 2d 165, 173-74, 651 N.E.2d 1105, 1109 (1995). Moreover, there can be no question, based on the admissions in the complaint plus the other submissions discussed above, that it was readily apparent generally, and specifically apparent to Baker or his counsel, that the Berger Corporation Agreement had not been executed and thus that the declaratory judgment complaint was not "warranted by existing law" as required by Rule 137.

We take cognizance of the fact that even if Baker or his counsel had been unaware of the situation, it would not exonerate them from sanctions because they had an obligation to investigate before filing. See *Fremarek*, 272 Ill. App. 3d at 1075-76, 651 N.E.2d at 607-08 (reversing denial of motion for Rule 137 sanctions, where "reasonable inquiry" into facts and law would have shown that claimant's representations regarding workers' compensation lien were "devoid of any legal merit"); see also *Edwards*, 235 Ill. App. 3d at 220, 601 N.E.2d at 867 (Rule 137 imposes upon both client and counsel the duty to make "reasonable inquiry").

The fact that Baker's suit may have had validity against one of the entities allegedly involved here does not validate his filing suit against another of these entities, even if there is some external relationship between them. Each separate entity must be dealt with on its own terms. *Cf. Van Pelt v. Berefco, Inc.*, 60 Ill. App. 2d 415, 430, 208 N.E.2d 858, 866 (1965) (declaration of rights not authorized "where plaintiff has named parties with whom he had no actual controversy and had omitted others without whom the controversy could not be terminated"). We note that this fact was recognized by the able trial judge, who in dismissing the complaint against the Berger Corporation stated that "in this instance any claim for a non-compete would go against the entities who signed the contract as a matter of law and not against parties who are not signatories to the contract."

Baker's declaratory judgment action was solely against the Berger Corporation. HPI, the only other respondent named in the complaint, apparently was never served and, as noted, was dismissed for want of prosecution. CSI, the only one of the three entities with a fully executed contract attached to the complaint and therefore the only entity that belongs in the lawsuit, was never joined or named as a party to this action.

Baker argues first that the lack of a signed copy of the Berger Corporation Agreement is "not controlling." According to Baker, "it is not at all unusual for an employer or corporation to keep signed copies of restrictive covenants, even if the employee does not keep a signed copy, is never given one, or misplaces it." Baker contends that while

he did not have a signed copy of the Berger Corporation Agreement, he "believed" that the agreement had been "fully executed." As noted, the standard used in applying Rule 137 is an objective one where the court must determine what was reasonable at the time of filing. A subjective, good-faith belief that the case is well grounded in fact or law is insufficient to meet the burden of Rule 137. *Burrows v. Pick*, 306 Ill. App. 3d 1048, 1051, 715 N.E.2d 792, 794 (1999); *Fremarek*, 272 Ill. App. 3d at 1074-75, 651 N.E.2d at 607; *Edwards*, 235 Ill. App. 3d at 220-21, 601 N.E.2d at 867. For purposes of Rule 137, it is irrelevant whether Baker subjectively believed that the Berger Corporation possessed a signed copy of the Berger Corporation Agreement.

Moreover, Baker's alleged belief that the Berger Corporation Agreement had been executed is negated by the allegations in his complaint that the parties to the contract "were to be" (rather than "were") Baker and the Berger Corporation, and that his employer was CSI and not the Berger Corporation. These admissions are fully consistent with the assertion by the Berger Corporation's counsel (in a December 1999 letter) that "no fully executed written employment contract of any type" existed between Baker and the Berger Corporation, and with Berger's statement in his January 2000 affidavit that neither he nor anyone else had ever signed the Berger Corporation Agreement.

Since there is no executed contract between Baker and the Berger Corporation, there is no "actual controversy" between them as to the enforceability of the covenant not to compete. As noted, declaratory relief requires such a controversy, *i.e.*, a legitimate, concrete dispute "admitting of an immediate and definite determination of the parties' rights." *Netsch*, 166 Ill. 2d at 173, 651 N.E.2d at 1109. While the "actual controversy" requirement is met even if there is merely a *threat* of injury to the plaintiff (see *Mimica v. Area Interstate Trucking, Inc.*, 250 Ill. App. 3d 423, 426, 620 N.E.2d 1328, 1331 (1993)), here there is not even that. Berger did not threaten to enforce the Berger Corporation Agreement against Baker, nor did Baker allege that such a threat was made. Absent an executed contract or even a threat to enforce the contract, there is no dispute here, and Baker's suit therefore has no basis in law or fact within the meaning of Rule 137. A suit lacking such a basis is frivolous. See *Fremarek*, 272 Ill. App. 3d at 1074, 651 N.E.2d at 606.

Even if the Berger Corporation Agreement had been executed and operational, it appears from the allegations in Baker's complaint and from the terms of the contract that the noncompete provision would nonetheless have expired before Baker's declaratory judgment complaint was filed. Thus the case would be moot and therefore outside

the proper scope of declaratory relief. See *Barrington Community Unit School District No. 220 v. Special Education District*, 245 Ill. App. 3d 242, 251, 615 N.E.2d 1153, 1160 (1993) ("actual controversy" requirement "is designed to prevent the court from passing on hypothetical questions of law or rendering advisory opinions, such as when the case is moot or premature"); *Weber v. St. Paul Fire & Marine Insurance Co.*, 251 Ill. App. 3d 371, 373, 622 N.E.2d 66, 68 (1993) (declaratory judgment action "is not intended to permit moot or hypothetical cases").

As noted, in the portion of Baker's complaint devoted to the Berger Corporation Agreement, Baker alleges that "all relations" with CSI, his employer, were severed on April 7, 1998. Later in the complaint he states that his "employment with HPI and CSI was terminated on April 7, 1998." As further noted, the noncompete provisions in both the Berger Corporation Agreement and the CSI contract purported to prohibit Baker from competing "for eighteen months following the date of termination." Eighteen months from April 7, 1998, is October 1999, which is the month *before* Baker's (November 16, 1999) declaratory judgment complaint was filed.

Baker next argues that a reference in the unsigned Berger Corporation Agreement indicating that the Berger Corporation had signed the CSI contract could support a claim that the Berger Corporation was a party to the signed, executed CSI contract. This argument is without merit.

The pertinent portion of the Berger Corporation Agreement appears in its noncompete provision (paragraph 6) and states:

> "Employee acknowledges that he is the subject of restrictive covenants contained in that certain Agreement[ ] *executed by Daniel S. Berger, LTD*[,] and the Center for Special Immunology and contemporaneously with this Employment Agreement and the terms of said restrictive covenants are incorporated herein by reference." (Emphasis added.)

Thus the Berger Corporation Agreement appears to indicate that the Berger Corporation signed the CSI Agreement. However, there is nothing in the CSI Agreement itself to indicate that it was signed by the Berger Corporation. The CSI Agreement was signed by Baker and by Berger as medical director for CSI. There is no indication that Berger signed this contract on behalf of the Berger Corporation.

We fail to see how a reference in an *unsigned* contract indicating that the Berger Corporation had executed a separate, signed agreement could render the Berger Corporation a party to this second contract. This is particularly true where, as here, the CSI agreement was attached to the complaint and shows on its face that it was signed

not by the Berger Corporation but by Berger in his representative capacity *as the medical director for CSI*, an entity that is separate from the Berger Corporation.

Finally, with respect to the fact that in any event the noncompete provision would have expired prior to the filing of the complaint, Baker contends that this is not necessarily true. According to Baker, the word "termination" as used in the noncompete provisions is ambiguous, and thus might refer to the termination of the *contract*, and not to the termination date of Baker's employment. Baker also points to the "Term of Agreement" section of the Berger Corporation Agreement and the CSI contract, which section provides that the initial employment period is from July 1, 1997, to June 30, 1998, and that the "agreement shall continue to renew automatically after June 30th, unless terminated by either party by notice serviced by the other party by March 30th of the then current employment year." Thus, according to Baker's argument, if the word "termination" referred to the end of the contract, and if the contract were not terminated by either party by March 30, and thus were automatically renewed to the following June 30, then the 18-month noncompete period would not begin to run until June 30, 1999, which would extend the provision well beyond the November 1999 filing date of Baker's complaint.[4]

This highly speculative contention is unsupported by the text, and even in the absence of the fact that the Berger Corporation Agreement was never executed, it would not vindicate the pursuit of this declaratory judgment action. There is insufficient merit in this interpretation to raise the subject of Baker's declaratory judgment suit to the level of an "actual controversy," which as noted is required for declaratory relief. See *Netsch*, 166 Ill. 2d at 173, 651 N.E.2d at 1109; *Kerr*, 120 Ill. App. 3d at 1003, 458 N.E.2d at 1013. To bring a declaratory judgment action to pursue a remote, speculative possibility is to pursue a complaint that is otherwise unwarranted. "Where a matter is contingent or uncertain, a court will not declare the rights of the parties to that matter." *Drayson v. Wolff*, 277 Ill. App. 3d 975, 979, 661 N.E.2d 486, 490 (1996). In this instance, even if the Berger Corporation Agreement had been executed, the complaint for declaratory judgment still

---

[4]While Baker contends in his brief that his employment actually ended on March 16, 1999, and that the noncompete provisions thus would have been in effect well beyond the November 1999 filing date of his complaint, Baker nevertheless concedes in his complaint that "all relations with CSI were severed on April 7, 1998," and that his employment with CSI and HPI "was terminated on April 7, 1998." "Allegations contained in a complaint are judicial admissions and are conclusive against the pleader." *Calloway v. Allstate Insurance Co.*, 138 Ill. App. 3d 545, 549, 485 N.E.2d 1242, 1245 (1985).

would not have been warranted since the noncompete provision would have expired prior to the filing of the complaint, rendering the case moot in any event. See *Weber*, 251 Ill. App. 3d at 373, 622 N.E.2d at 68; *Barrington*, 245 Ill. App. 3d at 251, 615 N.E.2d at 1160.

We further emphasize that, as noted, of all the entities with which Baker purports to have entered into any kind of relationship, he joined only one of them, the Berger Corporation. While he also named HPI in his complaint, he never served it, and HPI was subsequently dismissed for want of prosecution. Significantly, Baker never even named CSI, with which he had a signed employment agreement. Thus of the three entities involved, only the Berger Corporation was joined, and it remains the sole target of the declaratory judgment action. The fact that there could be an action against CSI is therefore meaningless, since CSI was never joined.

While Berger's signature appears on the CSI agreement, it is clear from its face that he signed the agreement in his representative capacity on behalf of CSI and therefore would not be personally bound, even if he had signed in a corporate capacity. See *Goldstein v. Scott*, 108 Ill. App. 3d 867, 873, 439 N.E.2d 1039, 1044 (1982) (agent not liable for conduct of his principal if that principal is disclosed; officer of corporation cannot normally be held liable for acts he performs as corporation's agent). The trial court concluded that there was some color of right to bring this action, based on Berger's signature on the CSI agreement. With all due deference to the able trial judge, there is no conceivable basis on which to presume that this signature binds Baker to Berger or the Berger Corporation, since Berger signed only as an agent of CSI, and not individually. As noted, Baker did not see fit to sue CSI. The sole target of his declaratory judgment action was the Berger Corporation.

We are aware that the purpose of Rule 137 is not to penalize litigants because they were unsuccessful. That is not the situation here. The important point in the instant case is not that Baker was unsuccessful in his suit for declaratory judgment. Rather, it is that there was never a warranted reason for bringing this action against the Berger Corporation in the first place. Rule 137 *is* intended "to restrict litigants who plead frivolous or false matters without any basis in law." *Fremarek*, 272 Ill. App. 3d at 1074, 651 N.E.2d at 606; *Peterson*, 313 Ill. App. 3d at 7, 729 N.E.2d at 79-80.

While the award of sanctions is within the discretion of the trial court, this does not give the trial judge complete latitude where the facts are wholly inadequate to preclude such an award. See *TIC*, 315 Ill. App. 3d at 244, 732 N.E.2d at 1134 (while trial court's determination is given considerable deference, reviewing court is not precluded

from reviewing the record and finding abuse of discretion "if the facts warrant"). Even in the context of a dispute straddling both a federal and a state action which may have existed in this case, we conclude that the trial court's denial of the Berger Corporation's motion for sanctions was against the manifest weight of the evidence and thus was an abuse of discretion. See *TIC*, 315 Ill. App. 3d at 244, 732 N.E.2d at 1134; *In re Estate of J.M.*, 287 Ill. App. 3d 110, 115, 678 N.E.2d 15, 18 (1997).

Accordingly, we reverse the trial court's denial of the Berger Corporation's motion for Rule 137 sanctions and remand the cause for a determination as to the proper amount of sanctions.

Reversed and remanded.

CAHILL, P.J., and McBRIDE, J., concur.