(No. 30041.—

EULA SMITH *et al.,* Appellants, *vs.* LOGAN S. LADAGE *et al.,* Appellees.

*Opinion filed May 22, 1947—Rehearing denied September 16, 1947.*

338

■■■■■■■■    ■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■

J. W. TEMPLEMAN, of Springfield, for appellants.

HAROLD O. WERNER, J. THOR WANLESS, and FRANCIS C. BLAIR, all of Springfield, for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This cause comes to this court by direct appeal from a decree entered in the circuit court of Sangamon county. It presents questions as to the status of the title to an acre of ground used for cemetery purposes and the rights and interests of the parties to this suit in said cemetery. The complaint contained two counts, the first of which prayed for injunctive relief to enjoin and restrain defendants from desecrating the cemetery and the graves therein. The second count was for a money judgment as damages for acts already committed. The cause was referred to a special master and, after taking evidence, he recommended a decree dismissing the complaint. Plaintiffs' exceptions to the report were overruled and a decree entered as recommended.

At the beginning there is a question as to whether this court has jurisdiction by direct appeal. If there is any basis on which jurisdiction may attach, it must be because a freehold is involved. Facts pertinent to such inquiry are that in 1865 Orange B. Heaton and wife conveyed the acre in question to George A. Compton and Jacob Anthony "Trustees of the Brush Creek Burying Gound." A consideration of $30 was recited in the deed. The covenants of

the warranty were of the usual common-law form. The habendum clause was to the grantees and their successors in office. The tract conveyed was described as a square acre out of the southwest corner of a quarter section. The instrument contained no limitations or restrictions on the use of the property nor did it disclose the extent or purpose of the trust for which the property was conveyed other than what might be inferred from the description of the grantees "Trustees of Brush Creek Burying Ground."

In *Davidson* v. *Reed*, 111 Ill. 167, it was held that a dedication of land to the public for any public use may be established by grant, user or by the evidence of acceptance and declarations of the owners coupled with evidence of acceptance by the public. No particular form or ceremony showing acceptance by the public is necessary. In *Wormley* v. *Wormley*, 207 Ill. 411, it was said that the staking off of ground as a cemetery and allowing burials therein amounted to a dedication.

Evidence in this case indicating a dedication and acceptance is that there had been burials on the acre involved prior to the giving of the deed. The first interment occurred in 1848 and continued to 1922. It appears that at the time of defendants' acts complained of there was a hedge fence separating the acre from the remainder of the quarter of which it was a part. Several gravestones were erected to mark the graves. Under a similar state of facts, it was held in the *Davidson* and *Wormley cases* that the tracts involved in those cases had been dedicated to the public for use as a public burial ground. It is alleged in plaintiffs' complaint in this case that the acre was a private burial plot but the evidence establishes it as a public cemetery.

If the defense interposed by defendants is sustained, it, in effect, would deprive plaintiffs of any interest in the cemetery and consequently there would be no freehold involved. Plaintiff Agnes Crouch undertakes to establish

special title or interest acquired under deeds obtained from some of the heirs of Jacob Anthony. The parties assume that the title was conveyed to George A. Compton and Jacob Anthony as trustees, and on this assumption it would follow that the conveyance to the two trustees was joint and that upon the death of one, the title would devolve on the survivor. (*Reichert* v. *Missouri and Illinois Coal Co.* 231 Ill. 238.) In the absence of proof of such fact, it does not appear that the deeds from some of the heirs of Jacob Anthony to plaintiff conveyed any interest. However, plaintiff Crouch has five brothers buried in the cemetery. The other two plaintiffs also have relatives interred therein. It does not appear that the acre was ever platted designating burial lots or that any certificate or deed was issued for burial in any particular location.

As previously indicated, the public accepted the dedication of the tract for burial purposes and certain interests were thereby acquired in the public with the right of user subject to the rules and regulations of the authorities in control of the cemetery. After a burial, the relatives of the deceased acquired certain rights which permitted them to go to the grave of the deceased to give it attention, care for and beautify it. In *Brown* v. *Hill*, 284 Ill. 286, it was said: "The right to bury carries with it the right to do so according to the usual custom in the neighborhood, and undoubtedly includes the right of making mounds over and erecting stones and monuments at the graves; and the right to make such erections necessarily carries with it the right to protect them from spoliation. It is well settled that a court of equity will enjoin the owner of land from defacing or meddling with graves on land used for public burial purposes, at the suit of any party having deceased relatives or friends buried therein." To the same effect are *Wormley* v. *Wormley*, 207 Ill. 411; *McWhirter* v. *Newell*, 200 Ill. 583; and *Davidson* v. *Reed*, 111 Ill. 167. In discussing the nature of the right of the public and rela-

tives of the deceased in the burial ground, it was held in the *Brown case* that even though he may not acquire a fee-simple title but simply an easement which must be used subject to and in accordance with the reasonable by-laws of the cemetery, yet it is a property right in the burial lot which the law recognizes and protects from invasion whether it be by a mere trespasser or from the unauthorized and illegal acts of the authorities in control. It was said: "his remedy is commensurate with his rights, and he may maintain either trespass for damages or obtain a remedy by injunction to enforce and uphold his rights whenever necessary. The right of possession will continue so long as the cemetery continues to be used for that purpose." Holding, as we do, that the right of the plaintiffs as relatives of persons buried in the cemetery is in the nature of an easement, the further question arises as to whether the easement is of such duration as to make it a freehold.

In *Chaplain* v. *Comrs. of Highways*, 126 Ill. 264, in considering whether an easement was a freehold estate sufficient to sustain a direct appeal, it was said: "An estate, to be a freehold, must possess these two qualities, 1, immobility, that is, the property must be either land or some interest issuing out of or annexed to the land, and 2, a sufficient legal indeterminate duration." Under the principles announced in the cases cited, we hold that plaintiffs having relatives buried in the cemetery have a right to enter on such cemetery to care for the graves of the deceased relatives, that such right is an easement of indefinite duration and is such a freehold estate as to authorize a direct appeal.

In 1940 Logan S. Ladage and Francis I. Ladage acquired title to the remainder of the quarter section from which the cemetery had been carved. In the spring of 1943 they interested the supervisor and town clerk of Divernon township, where the cemetery was located, in having it vacated. At the annual town meeting held April

6, 1943, one of the electors present presented a resolution which received the unanimous vote of the seven electors present. The resolution, after setting forth a legal description of the cemetery tract, declared that it was vacated and that the supervisors and town clerk were authorized to execute and deliver a quitclaim deed to the Ladages, conveying to them all right, title and interest of the town in said acre. The resolution further provided that the supervisor and town clerk were authorized to remove all bodies buried in said tract to some other cemetery or burying ground selected by them, the cost and expenses of which were to be paid by the Ladages.

After the adoption of the resolution, defendant C. G. Bramley, an undertaker, was engaged by the supervisor of the township to remove all the bodies that could be found in the cemetery to another burial ground a little over a mile therefrom. Bramley and his assistants located and removed the remnants of fourteen burials and reinterred them in the other cemetery. They also removed some gravestones to the other cemetery. After the removal, and on May 1, 1943, defendant Harry J. Becker as supervisor of the township, and George E. Molohon as town clerk, executed a quitclaim deed conveying the cemetery acre to the Ladages. The deed was filed for record May 5, 1943, and the present suit was started in January, 1944.

Defendants contend that an act entitled, "An Act to provide for the removal of cemeteries," approved April 24, 1873, (Ill. Rev. Stat. 1945, chap. 21, par. 2,) authorizes the vacating of cemeteries such as this, and that the action taken by them was pursuant to such act. The statute provides that whenever any cemetery shall be embraced within the limits of any town or city "it shall be lawful for the corporate authorities thereof, if, in their opinion, any good cause exists why such cemetery should be removed, to cause the remains of all persons interred therein to be removed to some other suitable place: Provided said

corporate authorities shall have first obtained the assent of the trustees or other persons having the control or ownership of said cemetery, or a majority thereof."

The power of removal conferred by this section is a delegation of the power which the State in its sovereign capacity may exercise over cemeteries in the interest of the health and general welfare of the public. It cannot be exercised by the authorities of the city or town except on strict compliance with the terms on which the exercise of the power is conditioned. One of such conditions is that the authorities must find that "good cause exists why such cemetery should be removed." The good cause required must be of the same character under which the State could exercise the power, that is, such as relates to the health and general welfare of the public. The mere desire of an adjoining landowner to remove an objectionable sight of weeds and brush, and to convert the burial ground into a cornfield is not sufficient to support official action.

The resolution is silent as to the cause for removal of the bodies and the vacating of the cemetery. There is no evidence to indicate that the cemetery, even in its neglected state, was a menace to the public health or the general welfare. Furthermore, there was no compliance with the conditions imposed by the proviso. The right to exercise the power was dependent upon such compliance. Defendants ask that their failure to observe the requirement of the proviso be excused for the reason, as they say, there were no trustees from whom assent might have been obtained and that upon inquiry they were unable to learn of any persons who controlled the cemetery or who were interested therein as owners. It is obvious that neither of these excuses supports the exercise of the power. The trust did not terminate on the death of the grantees named in the deed. It continued for the use of the public as a burial ground and for the preservation of the rights of the heirs and relatives of those who had been interred

therein. If, as defendants contend, there had been an abandonment of the cemetery under conditions to permit the title to revert to the heirs of the original donors, then notice was due them under the statutory classification as owners. The resolution adopted at the town meeting was a nullity and did not furnish protection to any of the acts committed thereunder.

Defendants also rely on an act entitled "An Act ,in relation to the control and maintenance of public graveyards." (Ill. Rev. Stat. 1945, chap. 21, par. 13.) It provides that public graveyards not under the control of any corporation, sole organization or society and located within the limits of cities, villages, towns, townships, or counties, not under township organization, shall and may be controlled or vacated by the corporate authorities of such city, village, town, township or county, in such manner as such authorities may deem proper and in the case of towns such control may be vested in three trustees.

The purpose expressed by the title of the act is to control and maintain public cemeteries. Except for the words in the first sentence that such cemeteries "may be controlled or vacated" there is nothing in the act indicating a legislative intent to make provision for the vacating of public cemeteries. The validity of the act was not questioned in the trial court and is not open for discussion here. Therefore, it may be assumed that the legislature intended to delegate authority to townships or the other municipalities designated in the statute, to vacate public cemeteries. However, the authority so delegated must be in accord with the power which the State itself might have exercised as a police regulation. We have no doubt but that individual rights in a public cemetery must give way to the exercise of the police power. Conceding, then, for purposes here, that there was an authorization to the township officials to exercise the police power of the State to vacate the cemetery, it follows that the action to be taken must

be in the interests of the health, safety, comfort and general welfare of the public. In 10 American Jurisprudence, page 501, section 20, it is said: "The right that land devoted to use as a cemetery be so maintained is subject to the reasonable exercise of the police power. Where land becomes no longer suitable for the use to which it was dedicated, on account of the surrounding circumstances, the discontinuance of such use may be required by the legislature or a municipality, in the promotion of the public health or welfare. * * * Such legislation will not withstand a constitutional test if it is not required by the public welfare. The police power in this regard must not be exercised arbitrarily or unreasonably."

The only evidence offered to support the resolution adopted at the annual town meeting was as to the growth of weeds, vines, brush, and the disrepair of the gravestones. In short, the evidence describes the conditions usually found in a neglected country cemetery. There is no evidence tending to show that the unkempt condition of the cemetery in any way affects the health, comfort, safety or general welfare of the public. The cemetery is surrounded by agricultural lands, and as far as the evidence shows it is not in close proximity to any dwellings. The evidence is not clear as to whether it is located on a public highway. Without facts to bring the resolution within a proper exercise of the police power, it cannot be sustained as authorizing the action of the defendants.

Defendants do not contend that the deed executed by the supervisor and town clerk conveyed title to them. There is a reference in the record indicating that it was hoped such a deed would be considered as color of title which, accompanied by possession and payment of taxes, would, in course of time, ripen into a title.

Defendants contend there was an abandonment of the cemetery. If so, the purpose for which it was dedicated ceased and the right of the public to use it as a burial

ground and the interests of those who had relatives buried therein were cut off. Since plaintiffs' right to maintain this action arises out of the interests that they have by reason of the burial of deceased relatives therein, if there was an abandonment the right to maintain this action would cease. But that would not aid the title of the Ladages. Their controversy would be with those to whom the title reverted when it ceased to be used by the public for the purposes for which it was dedicated.

The last burial in the cemetery was in 1922. No one had given it attention in more than twenty years, except that several years ago someone constructed a fence around the grave of a relative. In 1937, employees of a Federal agency cleared the acre of brush, vines and other growth. Witnesses placed various estimates as to the number of tombstones standing in the cemetery in years past, varying from twenty-five to one hundred. There is evidence indicating that as late as 1940 there were forty or fifty graves at which the stones were standing.

Neglect to care for and beautify a cemetery for a long lapse of times does not constitute abandonment. In 10 American Jurisprudence, page 512, section 36, it is said: "As long as a cemetery is kept and preserved as a resting place for the dead, with anything to indicate the existence of graves, or as long as it is known and recognized by the public as a graveyard, it is not abandoned. Thus, where the bodies interred in a cemetery remain therein and the spot awakens sacred memories in living persons, the fact that for some years no new interments have been made and that the graves have been neglected does not operate as an abandonment and authorize the desecration of the graves."

The rights of those who have relatives buried in a public cemetery rest on a more substantial basis than the care and attention they give to the burial grounds of their dead. The cemetery involved in *Tracy* v. *Bittle*, 213 Mo.

302, (15 Am. & Eng. Ann. Cases, 167,) was neglected in much the same way as the one in the instant case. In considering whether there had been an abandonment, the court said: "In the case at bar most of those buried there are yet there. It is true that for some years no new interments have been made, but it is still the resting place of the dead. To this plaintiff and others sacred memories are awakened in viewing the spot. They cluster around the little half-worn mounds there. It is true that for some years this ground has not been kept in a condition commensurate with these memories. The vicissitudes of life sometimes may have been such as, for awhile, to make them forget these sacred memories, but such forgetfulness does not authorize the desecration of the graves of their loved ones, by strange hands. They have a right to return to the spot, and, as it were, bury their forgetfulness, and do homage to their sacred memories, by placing these resting places in proper and appropriate condition, and if there is a public burying ground, as in this case, no strange hand can forbid them." The evidence does not show that there had been an abandonment of the cemetery involved in this case and plaintiffs had not lost their right to maintain this action.

The hearing in the trial court was limited to the issues raised on the count asking for an injunction. Accordingly, the decree of the circuit court is reversed and the cause remanded, with directions to enter a decree on the first count in accord with the views herein expressed. It is further ordered that the costs of this appeal be taxed against the defendants, Logan S. Ladage and Francis I. Ladage.

*Reversed and remanded, with directions.*