No. 3-02-1030

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2003

THOMAS E. BOGNER, LINDA L. ) Appeal from the Circuit Court 

LINK, HAROLD A. SHEARER, MARY ) of the Tenth Judicial 

ANN FINNEGAN, DR. MARGARET ANN) Circuit, Marshall County, 

LOUIS, LARRY E. NAUMAN, ) Illinois

THOMAS J. NAUMAN, DAVID L. )

NAUMAN, DONALD PAUL SMITH, )

JOSEPH BENDER, THOMAS J. )

DIETZLER, AND WILLIAM P. )

ASHERMAN, on Behalf of )

Themselves and All Others )

Similarly Situated, ) No. 01-L-02

)

Plaintiffs-Appellees, ) 

)

v. ) 

)

) 

KENNETH J. VILLIGER, and )

GERALD C. VILLIGER, ) Honorable Scott Shore,

) Judge Presiding.

)

Defendants-Appellants. )

JUSTICE SCHMIDT delivered the opinion of the court:

This is an appeal from an order issued by the circuit court of Marshall County which grants a permanent injunction prohibiting defendants, Kenneth Villiger and Gerald Villiger, from operating an irrigation system through a cemetery.  The plaintiffs are a class of people all having ancestors buried in the cemetery.  Defendants appeal.   

BACKGROUND

In 1974, the defendants purchased approximately 170 acres of unirrigated farmland.  Located within the boundaries of this farmland lies a cemetery, known as the Old Catholic Cemetry, which spans .4 acres.  Approximately 112 graves are located within the cemetery.  Burials commenced in the cemetery around 1843.  In 1847, ownership of the cemetery was assumed by the Roman Catholic Diocese of Peoria.

In 1979, the defendants purchased an irrigation system for the property.  This irrigation system traversed the property suspended above ground by an in-line tandem wheel assembly which supports a horizontal bar that delivers water to the ground below.  

In 1996, defendants purchased a new irrigation system.  The new system also travels over the property suspended above the ground by an in-line tandem wheel assembly.  Both the 1979 system and 1996 system passed through a portion of the cemetery traveling over both graves and headstones.  The newer 1996 system’s path was nine feet east and parallel to the path used by the 1979 system.  

The path of the 1979 system took it over the graves of Augusta B. Acherman, Mary Green, Thomas R. Lloyd, and Katherine Weiss.  Plaintiff William P. Asherman is the great-grand nephew of Augusta B. Acherman.    

The path of the 1996 system takes it over the graves and headstones of John V. Mattern, Catherine Downey and John Downey.   Two of the named plaintiffs, Thomas J. Dietzler and Thomas E. Bogner, are the great-great-grand nephews of John V. Mattern. 

The plaintiffs filed this action seeking an injunction to prevent the defendants from operating their irrigation system through the cemetery.  The defendants filed affirmative defenses of 
laches
 and claimed to have acquired a right to operate the irrigation system through the cemetery by way of prescriptive easement.  The circuit court found 
laches
 to be inapplicable and struck it as an affirmative defense.  The circuit court further found that the defendants did not prove their prescriptive easement affirmative defense.  The court ruled in favor of the plaintiffs and granted the injunction.  

Defendants appeal, claiming it was error to strike defendants' 
laches
 defense and that the court improperly ruled against them on their prescriptive easement defense.  They add, on appeal, that the plaintiffs did not show they had a clear and ascertainable right in need of protection or that irreparable harm would result from allowing the irrigation system to operate.

ANALYSIS

Plaintiffs’ Property Rights

After burial, the relatives of the deceased acquire certain rights that permit them to go to the grave of the deceased and give it attention, care for and beautify it.  
Smith v. Ladage
, 397 Ill. 336, 74 N.E.2d 497 (1947).  Illinois courts have long held that relatives of those buried in cemeteries acquire an easement that must be used subject to and in accordance with the reasonable bylaws of the cemetery.  
McWhirter v. Newell
, 200 Ill. 583, 66 N.E. 345 (1903)
.  It is this property right by easement in the burial plot which lead our supreme court to state “the law recognizes and protects from invasion whether it be by a mere trespasser or from the unauthorized and illegal acts of the authorities in control.”  
Smith v. Ladage
, 397 Ill. at 341.  The 
Smith
 court went on to explain these rights by noting, “we hold that plaintiffs having relatives buried in the cemetery have a right to enter on such cemetery to care for the graves of the deceased relatives, that such right is an easement of indefinite duration and is such a freehold estate.” 
Smith v. Ladage
, 397 Ill. at 341.   

There can be no doubt the plaintiffs herein, having relatives buried in Old Catholic Cemetery, have a property right in that .4-acre parcel of land located within the defendants’ farm.  While this right may only be in the form of an easement, it is a protectable right nonetheless.  “It is well settled that a court of equity will enjoin the owner of land from defacing or meddling with graves on land used for public burial purposes, at the suit of any party having deceased relatives or friends buried therein.”  
Brown v. Hill
, 284 Ill. 286, 293-94, 119 N.E. 977, 980 (1918).  

Laches
 Affirmative Defense

To determine the proper standard of review for this issue, it is necessary to examine the exact manner in which the trial court disposed of the affirmative defense of 
laches
.  If a trial court determines, after considering the merits of the case, that the defense of 
laches
 is simply inapplicable to that particular case, then such a ruling will be reviewed under an abuse of discretion standard.   
Smith v. Intergovernmental Solid Waste Disposal Ass'n
, 239 Ill. App. 3d 123, 605 N.E.2d 654 (1992).  Whether a party is guilty of 
laches
 to a degree that would bar suit due to a delay in asserting a right is a matter within the trial court’s discretion.  
City of Rockford v. Suski
, 307 Ill. App. 3d 233, 718 N.E.2d 269 (1999).   However, when a trial court strikes the defense of 
laches
 finding it is inadequate as a matter of law, we review the granting of the motion to strike under a 
de novo
 standard. 
Smith v. Intergovernmental Solid Waste Disposal
 
Ass'n
, 239 Ill. App. 3d at 134; 
Betts v. Manville Personal Injury Settlement Trust
, 225 Ill. App. 3d 882, 588 N.E.2d 1193 (1992); 
Zientara v. Long Creek Township
, 211 Ill. App. 3d 226, 569 N.E.2d 1299 (1991). 

Here, the plaintiffs moved pursuant to section 2--615 of the Code of Civil Procedure (735 ILCS 5/2--615 (West 1998)) to strike the affirmative defense of 
laches
 claiming that “[t]he defense is substantially insufficient in law.”  In an order dated June 14, 2002, the trial court granted plaintiffs' motion to strike the defense of 
laches
.  The circuit court did not review the merits of the case and find the defense of 
laches
 inapplicable.  Rather, it granted a motion to strike finding that 
laches
 was inadequate as a matter of law to bar the plaintiffs’ suit.  Accordingly, the proper standard of review is 
de novo
. 

"In general, 
laches
 is such a neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration, and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity."  
Meyers v. Kissner
, 149 Ill. 2d 1, 12, 594 N.E.2d 336 (1992).   We believe the trial court acted properly in striking the 
laches
 defense as the record indicates the plaintiffs did not neglect to assert a right for a significant period of time.  Furthermore, the record indicates the defendants suffered no prejudice.  

In 1996, the defendants moved the track of the old irrigation system nine feet.  The new track damaged the grave stones and graves of two of the named plaintiffs' ancestors.  The old track did not pass over the same graves.  Plaintiff Thomas Bogner noticed the path of the 1996 irrigation system traveling over his ancestor’s graves and began to document the damage caused by the irrigation system as early as 1997.  Defendant Ken Villager testified that Thomas Bogner first complained about this situation in May of 1997.  He also formally complained to the Roman Catholic Diocese of Peoria in 1999. In 2000, correspondence was directed to the defendants asking them to cease their operation of the irrigation system through the cemetery.  On March 7, 2001, this suit was filed.  

Clearly, the duration of time from which the irrigation system began to traverse over the graves of Thomas Bogner’s ancestors until he asserted his rights is not such that the equitable doctrine of 
laches
 would bar the bringing of this suit.

Moreover, the defendants’ claim of prejudice also is flawed.  They assert that their expenditure of $66,000 in 1996 for a new irrigation system after operating a different irrigation system for 17 years with only minor complaints is enough to meet the prejudice requirement of a 
laches
 defense.  We disagree.  

Ken Villager testified that the defendants derive an additional $30,000 a year from increased yields as a result of the operation of the irrigation system.  They operated the system for at least the 1997, 1998, 1999, 2000, 2001 and 2002 harvest seasons.  Their $60,000 investment has already returned at least $180,000 in additional revenue by their own testimony.  As the defendants have recouped their investment times three, it is hard to see how any delay in asserting a right has prejudiced the defendants.  To the contrary, had the plaintiffs enjoined the new system immediately, defendants would have suffered a loss of their investment.  Accordingly, we find the trial court properly struck defendants’ 
laches
 affirmative defense.

Prescriptive Easement Affirmative Defense

To establish an easement by prescription, a party must prove that the use of the land was adverse, exclusive, continuous, and under a claim or title inconsistent with that of the true owner. 
Sparling v. Fon du Lac Township
, 319 Ill. App. 3d 560, 745 N.E.2d 660 (2001).  Whether a party has established an easement by prescription is a question of fact. 
Rush v. Collins
, 366 Ill. 307, 8 N.E.2d 659 (1937).  This court will not disturb such a finding unless it is against the manifest weight of the evidence. 
Smith v. Mervis
, 38 Ill. App. 3d 731, 348 N.E.2d 463 (1976).  A finding is against the manifest weight of the evidence if, when viewing the ruling in the light most favorable to the prevailing party, an opposite conclusion is clearly evident. 
Schackleton v. Federal Signal Corp
., 196 Ill. App. 3d 437, 554 N.E.2d 244 (1989).

The circuit court’s order indicates that the “[d]efendants have failed to establish any affirmative defense” of prescriptive easement “or permissive use, as to the Plaintiffs and Plaintiff class herein, such as would allow or justify their use of Old Catholic Cemetery property for the track of their irrigation system’s wheels.”  The burden of proving a prescriptive right is on the party alleging such right (
Illinois State Bank of Quincy v. Neece, 
43 Ill. App. 3d 470, 357 N.E.2d 228 (1976); 
Waller v. Hildebrecht
, 295 Ill. 116, 128 N.E. 807 (1920); 
Mueller v. Keller
, 18 Ill. 2d 334, 164 N.E.2d 28 (1960)) and all elements must be distinctly and clearly proved.  
Monroe v. Shrake
, 376 Ill. 253, 33 N.E.2d 459 (1941); 
Deboe v. Flick
, 172 Ill. App. 3d 673, 526 N.E.2d 913 (1988).  
Where the property has been used in an open, uninterrupted, continuous and exclusive manner for the required period, adversity will be presumed and the burden of proof shifts to the party denying the prescriptive easement to rebut the presumption.  
Sparling,
 319 Ill. App. 3d 560.  
For a prescriptive easement to be created, the adverse, continuous, uninterrupted and exclusive use must endure for a period of prescription, which is 20 years.  
Roller v. Logan Landfill, Inc.,
 
16 Ill. App. 3d 1046, 307 N.E.2d 424 (1974). 

Clearly, the defendants did not present evidence sufficient to satisfy the elements necessary to prove an easement by prescription. Most notably, defendants failed to satisfy the continuous use element necessary to claim a prescriptive easement.  By their own admission, the current irrigation system has only been in existence since 1996.  The previous irrigation system used a totally separate and distinct path from the one at issue in this litigation, which travels over Thomas Bogner’s ancestors' graves.  We refuse to hold, as the defendants request, that moving the path over which you trespass 17 years after the trespass began and then beginning a new trespass over a totally different path which aggrieves totally different parties constitutes continuous use.  To satisfy the continuous use element of a prescriptive easement, “the use must be confined to a definite and specific line of way.”  
Thorworth v. Scheets
, 269 Ill. 573, 582, 110 N.E. 42, 46 (1915).  

While we acknowledge that the 
Thorworth
 court found an easement by prescription did exist, this was so in part because the path traveled did not even vary two feet during more than thirty-five years.  
Thorworth v. Scheets
, 269 Ill. at 582.  Here, not only did the path vary 9 feet after 17 years, but by moving that 9 feet, it encroached upon the property rights of totally different parties.  As such, the defendants cannot in any way satisfy the continuous use element necessary to claim an easement by prescription.  Accordingly, the circuit court correctly held they failed to establish their affirmative defense.  

Plaintiffs Entitlement to Injunctive Relief

Defendants claim it was reversible error to grant the plaintiffs a permanent injunction forbidding the defendants from operating their irrigation system through the cemetery.  We disagree.

A party seeking a permanent injunction must prove it has a clear and ascertainable right in need of protection, irreparable harm will result if injunctive relief is not granted, and no adequate remedy at law exists.  
Hasco, Inc. v. Roche
, 299 Ill. App. 3d 118, 700 N.E.2d 768 (1998).  Unless the trial court abused its discretion and held contrary to the manifest weight of the evidence, a court of review will not set aside an injunction. 
Lubeznik v. HealthChicago
, Inc., 268 Ill. App. 3d 953, 644 N.E.2d 777 (1994).  

Defendants assert that, when weighing the evidence, the trial court did not give proper credit to the testimony of Monsignor Stephen Rohlfs of the Roman Catholic Diocese of Peoria. Monsignor Rohlfs testified that operating an irrigation system through the middle of a cemetery and across graves does not interfere with the reverential character of the cemetery.  The trial court was not only free but duty bound to weigh this testimony in the light of other evidence offered by the plaintiffs, which indicated the irrigation system ran over and damaged head stones, left muddy tracks in graves at least nine inches deep and did desecrate the graves.  Clearly, the trial court found Monsignor Rohlfs' opinions wanting when it found:

“Defendants have caused and continue to cause the tandem wheels of their irrigation equipment to tread over the gravesites, headstones and adjunct cemetery grounds, to the detriment of the physical integrity and sanctity thereof. *** This Court further finds that Defendants, since purchasing said land, and without prior authority, have disposed of fencing, moved and disposed of headstones, and cut or removed trees on cemetery grounds, all for their own convenience and economic benefit, without reverence or consideration for the sacred and sentimental character of the cemetery or the rights or sensitivities of those whose ancestors’ remains are there interred.”       

The trial court further found that no practical alternative or remedy at law was available to protect the integrity and sacred value of the cemetery.  We agree.  

The trial court correctly found that the plaintiffs had a clear and ascertainable right in need of protecting, that irreparable harm would result should an injunction not issue and that no adequate remedy existed at law.  

CONCLUSION

When viewing the photos, testimony and record as a whole, it is clear that the defendants' actions desecrated the graves of the plaintiffs’ ancestors.  
In light of the foregoing, we cannot say the trial judge abused his discretion in ruling for the plaintiffs and therefore affirm the ruling below.  

The ruling of the circuit court of Marshall County is therefore affirmed.

Affirmed.

LYTTON and SLATER, JJ., concur.