960 N.E.2d 1197 (2011)
356 Ill. Dec. 74
Jon DeRAEDT, Walter Fuchs, and Bonnie Fuchs, Plaintiffs and Counterdefendants-Appellants,
v.
Reginice M. RABIOLA, Defendant and Counterplaintiff-Appellee.
No. 2-10-0719.
Appellate Court of Illinois, Second District.
November 8, 2011.
*1201 John W. Damisch, Marni Zaideman, Damisch & Damisch, Ltd., Chicago, for Jon DeRaedt, Bonnie Fuchs, Walter Fuchs.
Richard H. Balog, Attorney at Law, Geneva, for Reginice M. Rabiola.

OPINION
Justice SCHOSTOK delivered the judgment of the court, with opinion.
¶ 1 The plaintiff Jon DeRaedt sued the defendant, his neighbor Reginice Rabiola, alleging that she repeatedly trespassed on a grassy strip located on the land he leased from the plaintiffs Bonnie and Walter Fuchs. He sought: (1) an injunction to prevent the trespass; (2) to quiet title via a declaratory judgment that Rabiola did not have an easement over the grassy strip; and (3) compensatory damages for four rows of corn that Rabiola allegedly destroyed through her use of the strip as well as punitive damages. The trial court entered an injunction against Rabiola's use of the strip, ultimately found that there was no easement and quieted title in the Fuchses, and awarded damages in the amount of $237 for the destroyed corn. Thereafter, the plaintiffs moved for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994). The trial court denied the motion, and the plaintiffs appeal the denial of sanctions. We reverse and remand.

¶ 2 Factual and Procedural Background
¶ 3 In 2004, Rabiola bought a farm immediately east of the Fuchs farm. She built stables and an indoor riding ring on a portion of her land, and grew hay on the back portion. The Fuchs farm, which had been leased to and farmed by DeRaedt since 1997, had a grassy strip running along the eastern side of the property, along the border with Rabiola's farm. Rabiola used the strip to get trucks and equipment to her stables area and the hay field beyond, despite the presence of "No Trespassing" signs and DeRaedt's verbal objections. According to DeRaedt, in 2005 Rabiola also dumped waste material from the horses' stalls, used bedding that contained wood shavings and other matter, on a portion of the grassy strip and on the Fuchses' field next to the strip.
¶ 4 In the spring of 2006, DeRaedt plowed the grassy strip and planted corn there. After the corn had begun to grow, heavy machinery traveled over the area and cut or destroyed the corn. DeRaedt called the Kane County sheriff's office and reported that Rabiola had trespassed on his cornfield and destroyed part of his crop. Rabiola told the deputy sheriff that the grassy strip was an access road and that she was entitled to use it to get to her hay fields. On June 26, 2006, an attorney for DeRaedt wrote to Rabiola, asking her to stop trespassing and dumping on DeRaedt's leased farm. The attorney advised her that the relevant county and title company records showed no easement over any portion of the Fuchs farm. On July 31, 2006, after being notified that Rabiola was represented by counsel, DeRaedt's attorney wrote Rabiola's attorney, advising *1202 that the Fuchses had not granted Rabiola permission to traverse their land and outlining facts that he believed could be established showing that no easement (whether express, implied by necessity, or acquired by prescription) existed. However, the dispute remained unresolved.
¶ 5 On March 7, 2007, DeRaedt filed suit against Rabiola in the circuit court of Kane County. In his verified complaint, he recited the history of Rabiola's alleged trespassing and dumping and sought an injunction barring Rabiola from entering upon DeRaedt's leased land or dumping there. In addition, DeRaedt sought compensatory damages for the destroyed crops and the cost of remediating the soil where the waste materials were dumped and punitive damages for Rabiola's willful and continuing trespass. DeRaedt attached to his complaint a plat of the two farms and the surrounding area, which did not show any easement; copies of the sheriff's report and DeRaedt's attorney's letters to Rabiola; and photographs showing (a) the grassy strip and DeRaedt's field posted with "No Trespassing" signs, (b) an aerial view of the farms, showing the strip and, on the Fuchs farm directly across the strip from the location of Rabiola's barn, a light-colored semicircular area that DeRaedt stated was caused by the dumped waste materials, and (c) the corn planted along the grassy strip in 2006, both when it was growing and when it had been cut down. Rabiola filed a motion to dismiss the complaint, arguing that it contained too many extraneous facts and that it did not state a claim for punitive damages.
¶ 6 DeRaedt moved for the entry of a temporary injunction on May 9, 2007. Rabiola filed a response containing bare denials of all of DeRaedt's assertions. On June 5, 2007, Rabiola filed a countercomplaint against both DeRaedt and the Fuchses, alleging that there was an easement in favor of her property upon the grassy strip (which she characterized as being located "between" the Fuchs farm and her own) "by way of prescription and of necessity." She alleged that the easement by prescription was created before she bought her property and was used by the previous owners for more than 20 years. She asserted that the use of the easement had been "adverse, uninterrupted, exclusive, continuous, and under a claim of right" for longer than 20 years. She also stated that she was unable to access the south end of her property with farm machinery across her own land. She sought an injunction barring DeRaedt and the Fuchses from plowing and planting the grassy strip. Rabiola also filed a motion for a temporary restraining order or preliminary injunction, to which she attached her own affidavit. The affidavit stated that, before she bought her property, it was farmed by Bob and Gordon Gehrke, who "continuously used the easement between [her] land and the Fuchs farm to gain access to the land" at the south end of the property, and that this use was "with the knowledge and acquiescence of the owners of the Fuchs property, but without their permission." On June 6, 2007, the trial court entered an order enjoining Rabiola from using the grassy strip until further order of court. The trial court also dismissed the complaint but gave DeRaedt time to file an amended complaint.
¶ 7 On June 20, 2007, DeRaedt filed a verified amended complaint containing the same claims as his original complaint, but stating them in simpler terms. Rabiola filed a verified answer denying essentially all of the allegations. In October 2007, DeRaedt filed a verified second amended complaint including the Fuchses as plaintiffs and asserting the same claims. Rabiola *1203 again filed a verified answer denying essentially all of the allegations.
¶ 8 In April 2008, the plaintiffs filed a motion for partial summary judgment, asking the trial court to rule that Rabiola had no easement rights over any portion of the Fuchs farm, enter a permanent injunction preventing Rabiola from coming onto the grassy strip, and either award damages or transfer the case to the law division for the setting of appropriate damages. In the motion, the plaintiffs discussed the various types of easements that Rabiola might be deemed to be asserting over the grassy strip, and attached evidence and cited case law to show why none of them in fact existed.
¶ 9 As to an express easement, the plaintiffs attached and discussed deeds and title documents showing that the grassy strip was part of the Fuchs farm, not "between" the Fuchs farm and Rabiola's farm, and showing no easement running over the Fuchs farm. As to a prescriptive or adverse easement (the requirements for which are similar), Rabiola's allegations of 20 years of use of the grassy strip that was adverse, uninterrupted, continuous, and under a claim of right were negated in several ways. First, her allegations were negated by her own statements that she had asked Walter Fuchs for permission to use the grassy strip, which demonstrated that her use of the strip was not hostile or under a claim of right. Second, her assertions of "continuous" and hostile use were contradicted by the affidavits of several persons, including Kimberly and Kevin Wiedenfeld (who previously owned and sold the farm to Rabiola), Bob Gehrke (who leased and farmed the Rabiola farm before Rabiola bought it), and owners of the Fuchs farm for the previous 20 years, including Walter Fuchs and Leland Strom. The affidavits included Kim Wiedenfeld's statement that, prior to the sale, Rabiola asked Wiedenfeld if she could use the grassy strip to get to the rear of the farm and Wiedenfeld told her no, there was no easement and it was not their property; Gehrke's statement that, when he farmed on the Rabiola farm, he accessed the rear fields across the farm itself, that travel on the grassy strip was not necessary for such access, and that on the two or three occasions he had used the strip he had DeRaedt's permission to do so; and the statements of the prior owners and other persons farming the two farms that any use of the grassy strip by anyone other than the owners and tenant farmers of the Fuchs farm was at most occasional and was by permission. Walter Fuchs's affidavit stated that he had not given Rabiola permission to use the grassy strip.
¶ 10 As to an easement by necessity, the plaintiffs argued that Rabiola could not meet the legal requirements for such an easement because her parcel was not landlocked and she was able to access her hay fields across her own land, although she chose not to do so. Finally, as to an unspecified "implied" easement, deeds and title documents showed that no such easement was created when the two farms were initially severed in 1882, and so again the legal requirements for such an easement could not be met.
¶ 11 Rabiola responded to the motion for summary judgment in several ways. First, she filed motions to strike all of the affidavits attached to the plaintiffs' motion, claiming that one (or in some instances, a few) of the statements in each affidavit were conclusory rather than being based on personal knowledge. These motions did not attack the great majority of the statements in the affidavits but simply sought to strike all of them because of the presence of the conclusory statements. Rabiola also filed a responsive brief, in which she asserted (without citing to any *1204 supporting evidence) that there was "a question of fact as to whether an easement by prescription," which requires 20 or more years of continuous and adverse use under a claim of right, existed in her favor. She also cited case law regarding easements implied by necessity or from a preexisting use, which can be shown where: (1) there was separation of title between the two parcels; (2) before the separation, the use was "so long continued, obvious, or manifest, to that degree which will show it was meant to be permanent"; and (3) the use of the claimed easement was essential to the enjoyment of the land conveyed or retained. Gilbert v. Chicago Title & Trust Co., 7 Ill.2d 496, 499, 131 N.E.2d 1 (1955). Rabiola pointed to the fact that several of the affidavits supporting the motion for summary judgment conceded that, over the years, persons farming her property prior to her ownership might have used the grassy strip to access the rear fields on two or three occasions. However, she did not submit any evidence that the grassy strip was used in such a manner (or even existed) prior to the severance of the parcels in 1882.
¶ 12 Rabiola also attached her own affidavit to her response to the motion for summary judgment. Putting aside the hearsay statements contained in it, her affidavit stated that: (a) on one occasion in April 2004, before she bought the property, she saw Gordon and Bob Gehrke move their equipment over the grassy strip to enter the rear fields; (b) in 2005, she hired a local farmer to harvest her hay and he attempted to bring a hay wagon over her own property to get to the hay field but his wagon got stuck and nearly tipped over; (c) in the fall of 2005 she told DeRaedt that she wanted to use the grassy strip as an access road to her hay field and he agreed not to tear up the strip or plant corn on it; (d) she told the farmer she hired in the spring of 2006 to use the grassy strip for access when harvesting her hay; and (e) after the complaint was filed in 2007, she received a phone call from Walter Fuchs and asked his permission to use the grassy strip three or four times a year to harvest her hay crop, and he gave her such permission. She also denied that she or anyone acting at her direction cut down the corn planted on the strip in 2006, and denied Kimberly Wiedenfeld's account of the conversation they had before she bought her property, instead stating that she never discussed the grassy strip with Wiedenfeld. Rabiola attached to her affidavit "Sidwell maps" (aerial photos that do not appear to indicate property boundaries or other legal appurtenances to property) dated 1980, 1987, and 1997, all of which showed a grassy strip in the relevant location.
¶ 13 At the outset of the July 2008 hearing on the motion for summary judgment, Rabiola's attorney advised the court that, nine months earlier, Rabiola received permission from Kane County to build a culvert on her property that would allow her to access her hay fields without using the grassy strip. Rabiola therefore wished to withdraw her countercomplaint and believed that the case was moot. Judge Michael Colwell, who was presiding over the case, thereupon denied the motion for summary judgment "based on mootness," dismissed Rabiola's countercomplaint as moot, and continued the case for an assessment of damages and possible Rule 137 sanctions. The plaintiffs moved for reconsideration, arguing that the existence of alternate access for Rabiola did not moot their need to establish clear title free of any easement. In September 2008, Judge Colwell denied the motion for reconsideration and transferred the case to Judge Judith Brawka in the law division of the court.
*1205 ¶ 14 Thereafter, the parties conducted discovery. In March 2009, during her deposition, Rabiola repeated her assertion that in 2006 or 2007 she asked Walter Fuchs for permission to use the grassy strip for harvesting her hay and that he gave her such permission. When asked what evidence she believed supported her claim of easement, she identified three items: the Sidwell maps, a conversation with Michael Ormand (whose family owned the Rabiola farm prior to the Wiedenfelds and still owned the farm across the way), and a conversation with Kim Wiedenfeld. The Ormand conversation occurred after she put in the new culvert (and thus well after she filed her countercomplaint). Rabiola testified that Ormand asked her why she had put the new culvert in, and when she told him about the lawsuit, Ormand expressed surprise and said, "That grass strip has been usedI can't even remember how many years that grass strip has been used to farm these fields." She did not recall whether Ormand said that the landowners had given permission to travel on the strip of land. As to her conversation with Wiedenfeld, Rabiola testified that, contrary to her statements in her affidavit opposing summary judgment, the two women spoke about the grassy strip in April 2004 prior to the closing on the sale of the farm. According to Rabiola, after she saw the Gehrkes driving farm machinery on the grassy strip she pointed to the strip and asked Wiedenfeld if that was how the farmers got back to Wiedenfeld's field to "do her crops," and Wiedenfeld said yes.
¶ 15 In April 2009, Rabiola filed her answers to the second set of requests for admissions of fact pursuant to Illinois Supreme Court Rule 216 (eff. Aug. 1, 1985). In her answer to the first request, she had admitted that she "no longer claim[ed] any easement over the grassy strip of land [as] set forth" in her countercomplaint. However, in her answers to other requests, Rabiola appeared to contradict herself, denying the plaintiffs' requests to admit that she did not claim an easement over the grassy strip by implication, prescription, and adverse possession.
¶ 16 In October 2009, Judge Brawka held a pretrial conference with the parties. Afterward, she entered an order referring the case back to Judge Colwell "for written clarification of the issues remaining for trial before this court * * * including whether Judge Colwell found the issues in the complaint for injunction moot, such that the only issues before this * * * court are those of damages and [the Rule] 137 motion." On February 19, 2010, Judge Colwell held another pretrial conference, at the close of which he entered an order stating that "judgment is entered in favor of plaintiffs * * * that Defendant and Counterplaintiff Reginice M. Rabiola has no valid easement in the subject real estate set out in the complaint." Title to the property was quieted in the Fuchses free of any claim by Rabiola. The order also awarded DeRaedt $237 in compensatory damages.
¶ 17 The plaintiffs filed a timely motion for sanctions pursuant to Rule 137. In the motion, the plaintiffs highlighted Rabiola's insistence, prior to the lawsuit, that she held an easement over the grassy strip and her refusal to stop using it, forcing the plaintiffs to take the matter to court. They argued that Rabiola had no valid legal basis for claiming an easement over the strip, yet she continued to press that claim via her countercomplaint and various defensive filings. In the motion, the plaintiffs listed Rabiola's pleadings, motions, and other papers that they contended contained statements made without a factual or legal basis, and they identified the pertinent statements in each filing. The filings that the plaintiffs contended were signed in bad faith included Rabiola's *1206 countercomplaint, her answer to their second amended complaint, her motion for a temporary restraining order or preliminary injunction, her responses to their requests to admit facts, and her response to the motion for partial summary judgment, including her affidavit. The plaintiffs charged that Rabiola did not promptly withdraw her claim when she received permission to build a culvert for access to her field but instead unjustifiably delayed for nine months, during which they incurred substantial expense, before withdrawing her countercomplaint at the start of the hearing on their motion for partial summary judgment. The plaintiffs also noted Rabiola's deposition testimony identifying only three pieces of evidence supporting her claim of easement, and they argued that this evidence was patently insufficient to raise a colorable claim. In addition, in her deposition Rabiola identified no evidence whatsoever that the alleged use of the grassy strip by her predecessors was continuous, hostile or adverse, exclusive, or under a claim of right. The plaintiffs sought sanctions in the amount of their attorney fees for the entire lawsuit, which totaled $95,807.
¶ 18 Rabiola did not respond directly to the motion and instead filed a "motion to strike and dismiss pursuant to 735 ILCS 5/2-615 and 735 ILCS 5/2-619," asserting that the plaintiffs had not specifically identified the filings at issue, the allegedly untrue statements, which party or attorney signed each filing, and the attorney fees incurred as a result of each sanctionable statement or filing. Rabiola also argued that the attorney fees should be capped at $5,000, based upon Walter Fuchs's statement in his deposition that he had paid only $5,000 thus far in attorney fees. Finally, Rabiola argued that awarding the plaintiffs their attorney fees as a sanction would be contrary to the American Rule, under which the parties to litigation generally bear their own costs. Rabiola made no effort to rebut the substance of the plaintiffs' motion, i.e., to show that her countercomplaint and continued defense of the case were warranted by existing law or were factually well grounded.
¶ 19 On June 18, 2010, the trial court heard oral arguments on the motion for sanctions and denied the motion. The plaintiffs filed a timely appeal.

¶ 20 Analysis
¶ 21 On appeal, the sole issue raised by the plaintiffs is the denial of their motion for sanctions pursuant to Rule 137. Rule 137 permits the trial court to impose sanctions on a party or attorney for "filing a pleading, motion, or other paper that is not well grounded in fact and warranted by existing law or which has been interposed for any improper purpose." In re Marriage of Adler, 271 Ill. App.3d 469, 476, 208 Ill.Dec. 31, 648 N.E.2d 953 (1995). The purpose of the rule is to discourage the pleading of frivolous or false matters and the assertion of claims without any basis in the law, by penalizing attorneys and parties who engage in such conduct. Baker v. Daniel S. Berger, Ltd., 323 Ill.App.3d 956, 963, 257 Ill.Dec. 268, 753 N.E.2d 463 (2001).
"In evaluating the conduct of an attorney [or party], the court must determine what was reasonable at the time of filing. Thus the standard to be used in applying the rule is an objective one. `It is not sufficient that an attorney "honestly believed" his or her case was well grounded in fact or law.'" Id. (quoting Fremarek v. John Hancock Mutual Life Insurance Co., 272 Ill.App.3d 1067, 1074-75, 209 Ill.Dec. 423, 651 N.E.2d 601 (1995)).
The grant or denial of sanctions is a matter within the trial court's discretion, and thus we review the trial court's decision *1207 for abuse of that discretion. Id. "A trial court abuses its discretion when its finding is against the manifest weight of the evidence [citation] or if no reasonable person would take the view adopted by it [citation]." Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp., 315 Ill.App.3d 238, 244, 247 Ill.Dec. 797, 732 N.E.2d 1129 (2000). In reviewing the imposition or denial of sanctions, we give the trial court's determination considerable deference but are not precluded from "independently reviewing the record and finding an abuse of discretion if the facts warrant." Id. "Although a circuit court does have broad discretion in deciding whether or not to impose sanctions, there are circumstances in which the decision not to impose sanctions is itself an abuse of discretion." (Emphasis omitted.) Santiago v. E.W. Bliss Co., 406 Ill.App.3d 449, 458, 346 Ill.Dec. 717, 941 N.E.2d 275 (2010).
¶ 22 We begin with the objections that Rabiola raised to the form of the plaintiffs' motion for sanctions, arguing that it did not identify with sufficient specificity the documents and statements that the plaintiffs asserted were untrue or made without a valid factual or legal basis. Even a brief inspection of the motion reveals this argument to be meritless. A motion for sanctions need only be specific enough to apprise the nonmovant of the allegations made and permit him to challenge and defend against those allegations. Whitmer v. Munson, 335 Ill.App.3d 501, 512, 269 Ill.Dec. 821, 781 N.E.2d 618 (2002). Here, the plaintiffs' motion for sanctions included detailed explanations of which filings, and which statements within those filings, they believed to have been made without a factual or legal basis. Thus, there is no basis for this argument.
¶ 23 Moreover, the heart of the argument raised in the plaintiffs' motion for sanctions is that Rabiola's claim to have an easement over the grassy stripa claim she advanced in an assortment of pleadings and other documents filed with the courtwas frivolous in its entirety because it lacked any legal or factual basis. The plaintiffs made this argument repeatedly, beginning when DeRaedt's attorney wrote to Rabiola and her lawyer even before the lawsuit was filed, and thus Rabiola could not have failed to be aware of the arguments raised in the motion for sanctions. We find no basis for Rabiola's assertion that the motion for sanctions lacked specificity or was insufficient to permit her to respond to the motion.[1]
¶ 24 Turning to the merits of the motion for sanctions, we note that Rabiola's brief on appeal contains numerous citations to authority, but those citations are for basic legal propositionsthe elements of an easement by implication, for instanceunaccompanied by any legal analysis or explanation of how Rabiola believes the cited case law applies to this appeal. (Indeed, the number of consecutive one-sentence citations and the lack of any connection to the facts of this case sometimes make it appear that Rabiola's attorney simply typed up several pages of case blurbs gleaned from the Illinois Digest.) Remarkably, Rabiola makes no effort to refute the plaintiffs' argument that her claim of an easement was frivolous. However, because we may affirm on any ground *1208 supported by the record (City of Chicago v. RN Realty, L.P., 357 Ill.App.3d 337, 344, 293 Ill.Dec. 196, 827 N.E.2d 1077 (2005)), we examine the record itself to see if we can discover therein a reasonable ground for denying the motion for sanctions, i.e., a sufficient factual or legal basis for the claim of an easement.
¶ 25 An easement may be created by grant, prescription, or implication. Friedman v. Gingiss, 182 Ill.App.3d 293, 295, 130 Ill.Dec. 738, 537 N.E.2d 1067 (1989). Rabiola did not assert that the easement she claimed had been created by a formal grant. Rather, she alleged in her countercomplaint that an easement over the strip existed "by way of prescription and of necessity." Necessity is one type of easement by implication; the other is an easement implied from prior use. Emanuel v. Hernandez, 313 Ill.App.3d 192, 196, 245 Ill.Dec. 892, 728 N.E.2d 1249 (2000). We examine each of these possibilities.
¶ 26 To establish an easement by prescription, the party asserting the easement must prove that she (or her predecessors with whom she is in privity) used the land in a manner that was adverse, exclusive, continuous, and under a claim of right inconsistent with that of the true owner. Bogner v. Villiger, 343 Ill. App.3d 264, 269, 277 Ill.Dec. 593, 796 N.E.2d 679 (2003). All of these elements must have been present simultaneously for the entire 20-year period of prescription. Id. at 270, 277 Ill.Dec. 593, 796 N.E.2d 679. The party asserting the easement has the burden to prove each of these elements by clear and distinct evidence. Id. at 269, 277 Ill.Dec. 593, 796 N.E.2d 679. In this case, Rabiola herself negated any possibility of an easement by prescription when she testified (in affidavits and in her deposition) that she had verbally sought permission from DeRaedt and Walter Fuchs to use the grassy strip. This is because the asking of permission is inconsistent with a "claim of right," that is, an assertion that one has the right to use the property regardless of the owner's permission.
"In order to establish the claim of right element the [person claiming the easement] would have to show that she and her predecessors in title acted in a manner indicating a right to use the [owner's land] unrelated to any license or permission for that use from [the owner] or [the owner's] predecessors in title." Klobucar v. Stancik, 138 Ill.App.3d 342, 344, 93 Ill.Dec. 124, 485 N.E.2d 1334 (1985).
Further, a claimant's use cannot be "adverse" as required for a prescriptive easement if the use is with the permission of the owner of the land on which the claimed easement lies. Light v. Steward, 128 Ill. App.3d 587, 591, 83 Ill.Dec. 760, 470 N.E.2d 1180 (1984) ("If it can be shown that the use has been made pursuant to the permission of the owner of the servient estate, it cannot be classified as being adverse."). As our supreme court held almost 100 years ago, the acknowledgment of the person using the claimed easement that the use is permissive is sufficient to destroy the claim of an easement by prescription. Bontz v. Stear, 285 Ill. 599, 603, 121 N.E. 176 (1918).
¶ 27 Here, even leaving aside the lack of any evidence that the grassy strip was used "continuously" by her predecessors in title and their agents for a 20-year period, Rabiola's admitted seeking of permission to use the strip conclusively defeats her claim of an easement by prescription. Moreover, the incompatibility between this permission-seeking and the claimed prescriptive easement existed before she first asserted her claimin her affidavit, Rabiola stated that she sought permission from DeRaedt to use the strip in the fall of 2005, well before she told the deputy that *1209 she had a right to use the strip, or argued in court that she had an easement. Accordingly, her claim of an easement by prescription was not supported by facts or law when she first asserted it, and a reasonable inquiry would have disclosed this.
¶ 28 We now examine whether Rabiola's claim of an easement implied by necessity was warranted by the facts and applicable law. An implied easement arises when two parcels are severed under circumstances indicating that the parties intended to create an easement across one of the parcels for the benefit of the other, but simply failed to put that intent into writing at the time. Emanuel, 313 Ill. App.3d at 196, 245 Ill.Dec. 892, 728 N.E.2d 1249. An easement by necessity may be implied when, at the time of severance, one of the parcels is landlocked, such that there is no reasonable means of access to it other than across the other parcel. Rexroat v. Thorell, 89 Ill.2d 221, 229, 60 Ill. Dec. 438, 433 N.E.2d 235 (1982); Canali v. Satre, 293 Ill.App.3d 407, 410, 227 Ill.Dec. 870, 688 N.E.2d 351 (1997). However, no implied easement by necessity can arise when there are other reasonable means of access to the property. Rexroat, 89 Ill.2d at 229, 60 Ill.Dec. 438, 433 N.E.2d 235; Canali, 293 Ill.App.3d at 410, 227 Ill.Dec. 870, 688 N.E.2d 351.
¶ 29 In this case, Rabiola could not claim an easement implied by necessity because her property was not landlocked; to the contrary, Burlington Road formed the northern boundary of her property. Thus, there is no dispute that Rabiola had a reasonable means of ingress and egress to her property without traveling on the grassy strip. Her claim of an implied easement was based on her desire to use the grassy strip to travel to the hay field at the south end of her farm instead of traveling on her own property to do so. Nothing in the law of easements suggests that Rabiola's desire to avoid the creation of a passable access to her hay field across her own property is sufficient to qualify as "necessity" when her parcel was not landlocked. This is such an elementary proposition that no competent attorney could have asserted in good faith a claim of easement by necessity under the circumstances present here.
¶ 30 In the interests of being comprehensive, we address one other claim of easement that Rabiola might have attempted to assert. Rabiola's countercomplaint did not explicitly allege that she was claiming the other type of implied easement, an easement implied through prior use. However, her response to the motion for partial summary judgment and her brief on appeal both state that "an easement that is not established by grant could be established by * * * an implied easement implied [sic] from a preexisting use," and cite the elements for such an easement: (1) the separation of title between two parcels; (2) before the separation, the use was "so long continued, obvious, or manifest, to that degree which will show it was meant to be permanent"; and (3) the use was essential to the enjoyment of the land conveyed or retained. Gilbert, 7 Ill.2d at 499, 131 N.E.2d 1. In order to prove this type of implied easement, the claimant must show that the use was well-established at the time of the severance. As this court explained in Emanuel:
"It is crucial to recognize that an implied easement is the product of the intention of the parties to the conveyance. [Citations.] * * * Because the intention of the parties to the conveyance that severs title is the crucial consideration, whether an easement exists depends wholly on the circumstances at the time of the severance of title. [Citations.] Thus, if an easement by implication does not arise at the moment of *1210 severance, a change in circumstances since the severance, no matter how great, cannot create any such easement." (Emphasis in original.) Emanuel, 313 Ill.App.3d at 196, 245 Ill.Dec. 892, 728 N.E.2d 1249.
We note that, although Rabiola alleged in her countercomplaint that "the easement was used by the previous landowners, their employees and agents, to gain access to the south side of the Fuchs' and Rabiola's property"that is, that the grassy strip was used for access to her south fields before her own purchase of the property she did not allege that the grassy strip was used for this purpose prior to the severance of the two parcels in 1882 or that this use was necessary at the time of the severance. Thus, she did not allege the elements required for an easement implied by preexisting use. Id. Indeed, nothing in the record suggests that Rabiola or her attorney had any reason to believe that these elements could be shown as of the time of severance, as they made no attempt to do so. A reasonable inquiry into the law of implied easements by preexisting use would have revealed that proof of the use of the grassy strip before 1882 would be required in order to claim such an easement.
¶ 31 Under Rule 137, parties and their attorneys have an affirmative duty to conduct an inquiry of the facts and law prior to filing an action, pleading, or other paper, and may properly be penalized for filing a frivolous claim without any basis in existing law. See Fremarek, 272 Ill.App.3d at 1074, 209 Ill.Dec. 423, 651 N.E.2d 601. Nonetheless, it is plain that Rabiola's attorney did not conduct such an inquiry, because, if he had, he could never have asserted that Rabiola had an easement by prescription or an implied easement of either type (necessity or preexisting use) over the grassy strip. No attorney who had conducted such an investigation could have filed such a claim in good faith, because it could not be supported by existing law. Id. at 1075, 209 Ill.Dec. 423, 651 N.E.2d 601 (reversing trial court's denial of sanctions when even minimal inquiry would have shown that the assertions made were not supported by existing law). A party's pleadings must meet an objective standard of reasonableness to avoid Rule 137 sanctions. Baker, 323 Ill.App.3d at 963, 257 Ill.Dec. 268, 753 N.E.2d 463. "Litigants may not deploy the use of legal process frivolously or falsely as a weapon in a feud between neighbors * * *." Whitmer, 335 Ill. App.3d at 516, 269 Ill.Dec. 821, 781 N.E.2d 618. Accordingly, we hold that the trial court abused its discretion in denying the motion for sanctions.
¶ 32 Neither on appeal nor below has Rabiola argued that the amount of attorney fees the plaintiffs sought as a sanction was unreasonable. Her sole argument regarding the amount of the fees is that they should be capped at $5,000, based upon statements made by Walter Fuchs at his deposition. At his deposition, Walter Fuchs testified that he had paid his lawyer $5,000 in 2007 and nothing since then, and his agreement with the lawyer was that the $5,000 was all that he would pay. However, he knew that the bill from his lawyer was greater than that, and he believed that the lawyer ought to get paid. Rabiola seeks to use these statements as an admission that $5,000 is the full extent of the legal fees incurred in connection with this case, but the statements prove only what Walter Fuchs had paid as of the date of the deposition, not the total fees that had been incurred. Rabiola cites no authority for the proposition that the amount paid to date by one plaintiff (out of several) prevents the recovery of the full *1211 fees incurred for the prosecution of an action, and we reject her argument.
¶ 33 Although Rabiola's arguments on appeal are quite limited, she briefly suggests that sanctions against her and her attorney are not warranted or perhaps should be lessened because "most of the legal work generated in this case was generated by" the plaintiffs, and Rabiola "only responded" to their actions. We firmly reject the suggestion that Rabiola's culpability for her frivolous claim is lessened because she was originally involved as a defendant rather than a plaintiff. Rabiola filed her frivolous countercomplaint within three months of the initial suit, and she became a plaintiff at that time, responsible for ensuring that her claim was well grounded in fact and warranted by existing law. Adler, 271 Ill.App.3d at 476, 208 Ill.Dec. 31, 648 N.E.2d 953. Rabiola also improperly delayed the dismissal of her countercomplaint by failing to apprise the trial court until nine months had passed that she had received permission to construct an alternate route to her hay field and therefore no longer sought an easement. During that time, the plaintiffs, unaware that she had obtained the permission, incurred substantial expense to assemble and present their motion for partial summary judgment. A party has an obligation to promptly dismiss a claim once it is found to be baseless or moot. Baker, 323 Ill.App.3d at 964, 257 Ill.Dec. 268, 753 N.E.2d 463. We also note that, even after her countercomplaint had been dismissed, Rabiola continued to claim the existence of an easement as a defense to the plaintiffs' claims despite the lack of any legal support for that assertion. "Even if a party withdraws the offensive pleading, he or she is still accountable for the damage done by violating Rule 137." J.F. Heckinger, 339 Ill.App.3d at 193, 274 Ill.Dec. 131, 790 N.E.2d 904; see also Schneider v. Schneider, 408 Ill.App.3d 192, 203, 348 Ill. Dec. 881, 945 N.E.2d 650 (2011) (party's actions in continuing to press the same meritless argument in response to the other party's filings throughout the litigation justified an award of Rule 137 sanctions including all attorney fees except the cost of the original filing). Thus, Rabiola's culpability for her frivolous assertion of an easement extends beyond the dismissal of the countercomplaint and to the point at which judgment was entered in favor of the plaintiffs.
¶ 34 The record also suggests that Rabiola's unwarranted claim that she had an easement over the grassy stripa claim she apparently did not bother to research before asserting it to DeRaedt, her neighbors, the sheriff's deputy, and the farmers she hired to harvest her hay was the sole reason that DeRaedt filed the suit to begin with. Rabiola's claim in essence forced DeRaedt to bring suit in order to protect his own rights in the land he farmed. However, we are cognizant that Rule 137 sanctions must be imposed on the basis of signed filings, not conduct. Krautsack v. Anderson, 223 Ill.2d 541, 562, 308 Ill.Dec. 302, 861 N.E.2d 633 (2006). Thus, it is possible that not all of the attorney fees sought in the plaintiffs' motion for sanctions would be appropriately awarded. We therefore remand this case to the trial court for a determination of the attorney fees that should be imposed as a Rule 137 sanction.
¶ 35 The plaintiffs ask us to hold, pursuant to Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994), that they can recover the costs and attorney fees associated with this appeal and to order the trial court to include such costs and fees when determining the fees awarded on remand. We prefer to award any costs and fees assessed under Rule 375 ourselves and will *1212 consider such an award upon the submission of a proper motion.
¶ 36 For all of the foregoing reasons, the judgment of the circuit court of Kane County is reversed and the cause is remanded for further proceedings consistent with this decision.
¶ 37 Reversed and remanded.
Justices ZENOFF and BURKE concurred in the judgment and opinion.
NOTES
[1] To the extent that Rabiola is seeking to argue that any sanctions that may be imposed must be limited to the costs and fees that are directly traceable to a particular sanctionable statement or filing, we reject the argument. Courts have consistently held that attorney fees awarded as a Rule 137 sanction need not be directly related to a particular offensive filing where the claim as a whole is baseless. J.F. Heckinger v. Welsh, 339 Ill.App.3d 189, 192, 274 Ill.Dec. 131, 790 N.E.2d 904 (2003) (discussing cases).